Shores Lumber Company, Appellant, vs. Claney and others, Respondents.

*January 31— February 21, 1899.*

*Sale of lumber: Rescission for failure of title: Nonperformance of contract: Excuse.*

1. By a contract indicating a present sale of lumber by plaintiff to defendants, the latter agreed to give their note for a part of the price and to pay the balance after plaintiff had carried the lumber for them to Chicago. Learning, however, that the title was still in plaintiff's vendor of the timber from which the lumber had been sawed, who had not been fully paid, defendants refused to give the note when demanded unless plaintiff would clear the title or give a bond for delivery of the lumber free from liens. Plaintiff refused to do either, and soon after removed defendants' mark from the lumber and sold it to other persons. *Held*, that the contract had been rescinded.

2. It was immaterial, in such case, that plaintiff's vendor permitted it to sell lumber before making payment, if no such claim was made when defendants refused to give the note and no information to that effect was ever given them.

3. Where, in such case, the carriage of other lumber belonging to defendants to market was made a condition precedent to the taking effect of the sale, the performance of that condition by plaintiff,

Shores Lumber Co. vs. Claney and others.

for which it was fully paid, did not preclude the defendants from rescinding the sale for failure of title.

4. The nonperformance of an agreement to transport lumber to market on the first trip made in the spring is not excused by the fact that there was ice near the dock which prevented getting at it handily.

APPEAL from a judgment of the circuit court for Ashland county: E. W. HELMS, Judge. *Affirmed.*

On November 22, 1895, the parties to this action made a contract, in which it was recited "that the said *Shores Lumber Company* have this day sold and delivered" to the defendants 850,000 feet of lumber piled on their dock at Ashland, at $7.75 per thousand feet. The defendants were to give their paper for $6,000, due March 18, 1896, and pay the balance due for the lumber when the same was delivered in Chicago. Plaintiff was to carry the lumber to Chicago at going freight rates, the first trip made in the spring of 1896. The contract further provided that plaintiff was to carry about 850,000 feet of other lumber, owned by defendants, from Ashland to Chicago, that fall, if the boats could make the trip, and in case the lumber was not delivered then the agreement to purchase the lumber first mentioned was to be void.

The complaint alleges the making of the contract, the carriage by plaintiff of so much of the defendants' lumber as was tendered it to carry, the refusal of defendants to make and deliver their note, and their refusal to receive any of the lumber purchased by them, although plaintiff carried the same to Chicago as agreed, and tendered the same to defendants. The complaint further states that plaintiff was compelled to sell said lumber in market, and did so sell it at the best advantage, and received therefor eighty-seven and one-half cents per thousand less than the contract price.

The answer admits the making of the contract, and alleges that after the execution thereof the defendants learned that plaintiff was not the owner of the said lumber and had no

right to sell the same, and that thereupon they refused to give their note as mentioned in the contract, unless the plaintiff would make the title good, which was not done. The other matters stated in the complaint were denied.

After hearing the evidence, the court directed a verdict in favor of defendants, on the ground that the evidence showed that the contract had been rescinded by the parties. A motion to set aside the verdict and for a new trial was denied, and the plaintiff appeals from the judgment for costs.

For the appellant there was a brief by *Cate, Sanborn, La-moreux & Park*, and oral argument by *A. W. Sanborn*. They argued, among other things, that the contract was executed on the part of the plaintiff by carrying the agreed lumber to Chicago, so that it could not be rescinded. Defendants could not rescind unless they placed the plaintiff *in statu quo*. *Simmons v. Putnam*, 11 Wis. 193; *Williams v. Ketchum*, 21 Wis. 432; *Herman v. Gray*, 79 Wis. 182; *Miller v. Palmer*, 95 Wis. 526; *Blake v. Pine Mountain I. & C. Co.* 76 Fed. Rep. 624. They gave no notice within a reasonable time of an intention to rescind. *South Milwaukee B. H. Co. v. Harte*, 95 Wis. 592.

For the respondents there was a brief by *Gleason & Sleight*, and oral argument by *E. F. Gleason*. They contended that a breach of the implied warranty of title arose immediately upon the sale, for which the defendants had a right to rescind. *Edgerton v. Michels*, 66 Wis. 124; *Hodges v. Wilkinson*, 17 L. R. A. (N. C.), 545; *Perkins v. Whelan*, 116 Mass. 542; *Grose v. Hennessey*, 13 Allen, 389; *Lewellen v. Crane*, 113 Ind. 289. They did rescind within a few days after they learned of the defect of title. The carrying of the other lumber to Chicago had nothing to do with the sale and delivery of this.

BARDEEN, J. The undisputed evidence shows that the lumber mentioned in the first clause of the written contract was

·manufactured from what were known as the Stocking logs. The timber from which this lumber was sawed was purchased by plaintiff under two contracts with Mr. Stocking, which provided that plaintiff was to cut the timber and saw the logs at Ashland. No lumber was to be shipped until the full purchase price for the timber was paid, but plaintiff was allowed to ship a part of the lumber of an average quality upon payment of $5 per thousand feet for the part shipped. The title and right of possession of the timber and lumber were to remain in Stocking until the purchase price was fully paid. Upon payment and the performance of the conditions of the contract, Stocking was to give a bill of sale of the lumber. The second contract recites a breach of the first contract by plaintiff, and grants an extension of time for the payment of the amount then due, but reserves the title and right of possession of the lumber in the vendor until the full payment of the purchase price.

The lumber in question consisted of twenty-two piles, located on plaintiff's dock at Ashland. Immediately after the execution of the contract in suit, all of said piles were marked with the defendants' mark, and a list of the piles and an estimate of the amount thereof was made. On December 5, 1895, and before defendants had executed the note mentioned in the contract, Stocking's agents notified defendants of his claim on the lumber, and that he would not waive his claim thereon, but would demand $5 per thousand before it left the dock. On December 6th or 7th following, plaintiff's agent demanded the note that was to have been given for the lumber from defendants. He was then notified of the claim made by Stocking, and informed that, unless plaintiff cleared the title or gave a bond for a delivery of the lumber free and clear of all liens, the note would not be given and the trade would be declared off. The agent, however, denies that anything was said about declaring the trade off. He refused to give a bond; defendants refused to give the

note; and nothing further was done in regard to the matter at that time. Shortly afterwards the marks of the defendants on these piles were planed off by plaintiff; a bill of sale of the lumber was made to Wilkinson & Co., and possession of the same turned over to the vendee. The interest of Wilkinson & Co. was subsequently assigned to the Manistee National Bank, and one cargo of this lumber, when shipped in the spring, was carried as the lumber of the bank, as is shown by the bills of lading.

Upon this state of facts the court directed a verdict for the defendants, basing his ruling upon the ground that the contract of sale had been rescinded. Unquestionably, under the evidence, the title and right of possession of this property were in Stocking. There is no pretense that defendants had any knowledge or information of the true situation. They were dealing with plaintiff on the basis that it had title to the property. The general rule in this country is that, where there is a sale of chattels in the vendor's possession at a fair price, there is always an implied warranty of the title, unless the facts and circumstances surrounding the transaction are such as to warrant a different conclusion. *Edgerton v. Michels,* 66 Wis. 124; *Marshall v. Duke,* 51 Ind. 62.

The wording of the contract indicates a present sale of the property, and the evidence shows an attempt to deliver immediate possession. Before the delivery of the note for the purchase price by the purchasers, the true owner of the lumber notified them of his claim thereon, and that he would not waive it without payment. Certainly, defendants were justified in refusing to make payment, under the circumstances in proof, unless plaintiff cleared the title to the lumber. Whether we consider Stocking's title an absolute or defeasible one does not change the situation. The contract of the parties, and their acts under it, indicating an attempt to make a present sale and delivery of the lumber, the vendor

Shores Lumber Co. vs. Claney and others.

could not lawfully compel the vendees to pay for property to which it had no title, or which was incumbered by liens or mortgages. The defendants offered to carry out the deal if plaintiff would satisfy the Stocking claim or give a bond to save them harmless. This the agent refused to do, and the defendants refused to give the note. Soon afterwards plaintiff removed the marks put on the lumber by the defendants, and either sold or mortgaged the same to Wilkinson & Co.,— an act distinctly hostile to the defendants' interest. This course of conduct can only be justified on the theory that plaintiff believed the trade with defendants had been declared off. An act more inconsistent with the claim that this lumber had been sold to defendants could hardly be imagined. Taken in connection with the talk had between the parties at the time the notes were demanded, we think there was ample ground for the conclusion arrived at by the court.

The contention that defendants could not rescind the contract, because plaintiff had carried out that part of it in relation to transporting the defendant's lumber to market, is of no importance. This clause in the contract as to the transportation of this lumber was merely a condition precedent to the taking effect of the other provisions of the contract relating to the sale of the lumber in suit. Plaintiff was fully paid for its services, and seeks no relief in this action on account thereof.

The witness Shores was asked the following question on the trial, to which an objection was sustained: "State whether or not you were permitted by Stocking or his agent to ship and sell lumber before you made payments." The question fixes no time and has no reference to the lumber in controversy. No such claim was made when defendants refused to give their note, nor is it pretended that any information to that effect was ever given them. With that idea in view, the testimony sought to be secured became im-

material. Other rulings on testimony are so inconsequential as not to require special mention, and are not considered error.

Plaintiff alleges performance of all the conditions of the contract on its part. One of the provisions was that it should carry this lumber the first trip made in the spring; yet the uncontradicted evidence is that it only shipped a portion of it, and its excuse is that there was ice near the dock, that prevented getting at it handily. If delivery and tender of this lumber to defendants were essential to plaintiff's recovery under the contract, its failure to do so without excuse would be fatal to this action.

In either view of the case, the plaintiff is without a right of recovery under the proof.

*By the Court.*— The judgment of the circuit court is affirmed.