MENASHA WOODEN WARE COMPANY and others, Respondents,
vs. TOWN OF WINTER and others, Appellants.

*December 12, 1914—January 12. 1915.*

*Taxpayers' action: Who may maintain: Nonresident taxpayers: Ques-*
*tion, how raised: Equity: Adequacy of legal remedy: Towns:*
*When may exercise powers of village boards: Population, how de-*
*termined: Census not conclusive:* Ultra vires *acts: Estoppel:*
*Town orders: Validity: Necessary parties: Illegal highway con-*
*tracts: Laches: Claims: Allowing excessive amount: Contracts*
*between town and its officers: Statute construed: Sale of prop-*
*erty or thing in action: Services: Poor persons: Payment of their*
*debts: Excessive supplies: Validation: Itemizing and verifying*
*claims: Refiling: Allowance by electors: Street lighting: Costs*
*against town officers.*

1. The question whether nonresident taxpayers of a town can main-
   tain an action against the town and the holders of town orders
   alleged to be invalid, to set aside and annul such orders, is prop-
   erly raised by answer setting up nonresidence and averring want
   of capacity to sue.
2. The wasting, by unlawful expenditure, of public funds raised by
   taxation is a wrong which affects resident and nonresident tax-
   payers alike, and either can maintain an action to redress the
   wrong.
3. Objection to an action by taxpayers to restrain the payment of
   illegal town orders, on the ground that the plaintiffs have an
   adequate remedy at law by paying the tax levied therefor under
   protest and suing for its recovery, or by an equitable action to
   remove the cloud upon their property created by the illegal tax,
   is not well founded, since a resort to either of those remedies
   would result in creating a deficit toward which they would have
   to contribute.   Only by enjoining the payment of an illegal or-
   der can complete immunity be had against the illegality.
4. The levy of an illegal tax, the letting of contracts in contempla-
   tion of its collection, and the doing of work and issuance of town
   orders thereunder, presents more than a mere contemplated or
   threatened injury to taxpayers, and shows an existing equitable
   cause of action in their favor.
5. Upon the question whether a town having therein one or more in-
   corporated villages has a population of 500, so as to enable it,
   by vote of the electors, to exercise the powers of villages and
   village boards, as provided in sub. 13, sec. 776, Stats. 1913, the

federal census is *prima facie* evidence of the population it discloses; but, in the absence of any statutory declaration on the subject, neither that nor any other existing census can be held conclusive when the fact is challenged.

6. When the existence of the requisite population is put in issue, any evidence competent to establish the existence or nonexistence of the fact is admissible.

7. The rule against the impeachment of official documents does not apply to a challenge, in such a case, of the correctness of the enumeration of a state or federal census.

8. The doctrine of estoppel cannot be successfully invoked to sustain acts of a town which are clearly *ultra vires*.    McGowan v. Paul, 141 Wis. 388, followed.

9. A judgment in a taxpayers' action cannot lawfully determine the validity of town orders not issued to nor held by any of the parties to the action, and the fact that the holders may be numerous or scattered cannot affect their right to be heard.

10. Error in a judgment in a taxpayers' action, in that it attempts to pass upon the validity of town orders held by persons not before the court, does not affect its validity in respect to orders held by the defendants in the action.

11. A contract by town officers in excess of their powers, as one for work upon a highway having no legal existence, is void and cannot be validated by performance on the part of the contractor.

12. Even if the doctrine of equitable estoppel could, under any circumstances, apply to such a case, there would be no ground therefor where the work was done upon premises which were never used for highway purposes, so that the town received no benefit therefrom.

13. An action brought in September to restrain the payment of town orders issued under illegal contracts made in the preceding June, cannot be defeated on the ground of laches.

14. Electors of a town cannot give away the money of the taxpayers, and an order based upon a vote of the electors allowing one of the supervisors $200 upon a claim of only $175, for loss of a horse, is void.

15. Sec. 4549, Stats. 1913, which makes it an offense for any town officer to have, reserve, or acquire any pecuniary interest, directly or indirectly, present or prospective, absolute or conditional, in any "purchase or sale of any personal or real property or thing in action," or in any contract or bid relating thereto, applies as well to sales by such officer directly to the town as to sales made by other persons in which he has or acquires an interest; and all contracts in contravention of the statute are absolutely void.

16. Said statute, being highly penal, must be strictly construed, and cannot be held to prohibit contracts for personal services.

17. Where a merchant supplies goods to a poor person in excess of the amount authorized by the town supervisors, but in good faith upon the credit of the town, the town board may afterward, by ratification, validate such excess.

18. In a taxpayers' action to annul certain town orders, where the claims upon which the orders were issued were inadequately itemized or verified, the court, upon the trial, properly allowed the claims to be refiled, properly itemized and verified.

19. A town has no power to pay a debt of a poor person for house rent, or any other debt of such a person, which was not lawfully incurred on the credit of the town.

20. A claim for damages to a ladder, though small in amount, must be passed upon by the electors before the town board has authority to pay it.

21. A town has no authority to expend money for street lighting, and a purchase by the town board for that purpose is *ultra vires* and void.

22. The awarding of costs in a taxpayers' action to restrain the payment of illegal town orders, is a matter resting in the sound discretion of the trial court. Under the evidence in this case, which disclosed many irregularities and great looseness in the administration of town affairs, there was no abuse of discretion in awarding costs against the town officers and other defendants, but not against the town.

APPEAL from a judgment of· the circuit court for Sawyer county: JAMES WICKHAM, Circuit Judge. *Affirmed in part; reversed in part.*

This is an action by nonresident taxpayers of the town of *Winter* against the town, the officers of such town, and the *First National Bank of Rice Lake* as owner of certain town orders, to declare void certain specified orders issued for the erection of a system of waterworks in the unincorporated village of Winter, located in said town; certain specified town orders issued for the building and repair of highways in said town; and also certain specified orders issued for various other purposes stated in the opinion. The validity of the town orders issued for the erection of the waterworks system and the bulk of the highway orders depends upon whether or not the town of *Winter* since 1910 has had the authority to exercise the powers of a town containing a population of 500

or more.  The United States census for 1910 showed that the town of *Winter* had a population of 516, and at the annual town meeting for 1911 the electors thereof passed a resolution pursuant to the provisions of sub. 13 of sec. 776, Stats. 1911, purporting to give the town board of said town all the powers relating to villages conferred upon them by ch. 40 of the Statutes.  They also voted a tax levy of $6,000 for a waterworks system for the unincorporated village of Winter, and the next year they voted an additional $5,000 for the same purpose.  These taxes were paid by the plaintiffs without objection.  At the annual town meeting in 1913 the electors voted to levy an additional tax of $3,000 for waterworks purposes and a levy of $3,000 for highway purposes.  The supervisors of the town voted an additional levy of $3,000 for highways.  Sec. 1240, Stats. 1911, provides that "no town containing less than five hundred inhabitants shall levy or collect in any year a highway tax of more than two thousand dollars, including the amount voted by any town meeting and the amount levied by the supervisors."

The circuit court found that at no time during or since 1910 did the town of *Winter* have a population of 500 or more; that its population at no time exceeded 452 counting those who lived in the territory set off in 1911 to the town of Draper; and it held the orders issued for the waterworks void, and all orders in excess of $2,000 for highway purposes were also held void.  A large number of other orders depending upon individual irregularities or want of authority were also set aside. Defendants have taken no exceptions to many of the court's findings and rulings, so these will not be set out *in extenso*. Only such as are questioned by the appeal will be noticed, and to avoid duplication of statement of facts none will be given here as to individual orders, as such facts would have to be restated more or less in the opinion.  The plaintiffs' action affects only orders issued against the levy of 1913.  The validity of prior levies is not questioned.

For the appellants there were briefs by *W. F. Bailey* and *James Robbins,* and oral argument by *Mr. Bailey.*

For the respondents there was a brief by *J. C. Davis,* attorney, and *L. M. Sturdevant,* of counsel, and oral argument by *Mr. Sturdevant.*

VINJE, J. 1. The right of the plaintiffs to maintain the action is challenged on the ground that they are not residents of the town of *Winter.* Not being residents of the town, it is argued, they are not members of the corporation and have no standing in court to question its acts. The following Wisconsin cases are cited to show that such actions have always been brought by resident taxpayers: *Peck v. School Dist.* 21 Wis. 516; *Whiting v. S. & F. du L. R. Co.* 25 Wis. 167; *Judd v. Fox Lake,* 28 Wis. 583; *Lynch v. E., L. F. & M. R. Co.* 57 Wis. 430, 15 N. W. 743, 825; *Willard v. Comstock,* 58 Wis. 565, 17 N. W. 401; *Frederick v. Douglas Co.* 96 Wis. 411, 71 N. W. 798; *Webster v. Douglas Co.* 102 Wis. 181, 77 N. W. 885, 78 N. W. 451; *Jenkins v. Bradley,* 104 Wis. 541, 80 N. W. 1025; *Mueller v. Eau Claire Co.* 108 Wis. 304, 84 N. W. 430; *Carpenter v. Christianson,* 120 Wis. 558, 98 N. W. 517; *Chippewa B. Co. v. Durand,* 122 Wis. 85, 99 N. W. 603; *Harley v. Lindemann,* 129 Wis. 514, 109 N. W. 570; *Wilcox v. Porth,* 154 Wis. 422, 143 N. W. 165. And extracts from opinions therein showing that emphasis is laid upon the fact that plaintiffs are resident taxpayers and therefore damaged by any misuse of corporate funds are quoted in aid of the contention that none but resident taxpayers can maintain the action. Counsel for plaintiffs claim this objection was first raised by a demurrer *ore tenus,* and cite a number of cases to show that it must be taken by special demurrer or answer. Counsel are mistaken in saying the objection arose upon a demurrer *ore tenus.* The answer alleges that "none of the plaintiffs in this action are residents of the town of *Winter,* nor have their office in

said town, nor is such their principal place of business, and hence they are not members of the public corporation, the town of *Winter,* and have not the capacity to maintain this action." The question is therefore properly raised. It is a matter of some surprise that no action out of the many such brought in this state has been begun by nonresident taxpayers—especially in view of the fact that in large areas in the northern part of this state nonresident taxpayers pay half or more of the taxes. In the present case it is alleged and not denied that plaintiffs pay three fourths of the taxes of the town of *Winter.* Further than as a matter of surprise the fact can have no special significance upon the question of the right of plaintiffs to maintain the action. Neither is it particularly significant that in the actions referred to by counsel for defendants the court has used language appropriate to the facts therein and referred to plaintiffs as resident taxpayers or as members of the corporation—such being the fact. The vital question is, What wrong calls for a remedy in such cases? If it be a wrong peculiar to resident taxpayers or to members of the corporation only, then nonresidence might establish a line of demarcation. But such is not the fact. The wrong consists in the misuse of the taxpayers' money. And it affects resident and nonresident taxpayers equally. It is an ancient maxim of the law that "an action is not given to one who is not injured." 1 Corp. Jur. 915. The converse of the proposition is a maxim of equally early origin. An action is given to every one who is injured. Our constitution says "every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property or character." Art. I, sec. 9. It requires no argument to demonstrate that taxpayers who pay three fourths of the taxes of the town are injured by an unlawful expenditure of such taxes, no matter where such taxpayers live. It is the ownership of property subject to taxation within the town and not their residence that determines their

obligation to contribute to the lawful expenses of the town. And when the fund so contributed, which belongs to all the taxpayers, is wasted, it affects resident and nonresident taxpayers alike. As was said in a similar case, "It is the private interest of the taxpayer, after all, that enables him to set judicial machinery in motion in a suit of this sort." *Chippewa B. Co. v. Durand,* 122 Wis. 85, 107, 99 N. W. 603. The plaintiffs, therefore, have a sufficient interest in the subject matter of the action to institute and maintain it. Having once been properly instituted, since it is brought in behalf of all the taxpayers of the town, the original plaintiffs might drop out entirely and still the action could proceed. The judgment recovered is for the benefit of all the taxpayers, not for the plaintiffs alone.

2. The objection that the plaintiffs have an adequate remedy at law by paying the tax under protest and suing for its recovery, or by an equitable action to remove the cloud upon the title of their property created by the illegal tax, is not grounded upon a substantial basis. This case is well adapted for illustrating the fallacy of the claim. If the payment of the orders is not enjoined they will be paid out of the taxpayers' money. If plaintiffs recovered their share of the illegal tax or three fourths, a deficit to that extent would be created which would have to be levied upon the taxable property of the town and the plaintiffs would have to pay three fourths of such deficit, so in the end they would have to pay nine sixteenths of the illegal tax even if they recovered their first payment. Taxpayers are entitled to complete immunity from an illegal tax where they seasonably bring their action. The result in case of an action to remove a cloud upon the title of their property would likewise be only a partial remedy. If they refused to pay the tax and succeeded in having their property escape the first tax levied against it, a similar deficit would occur which would have to be made up by a tax levied upon all the taxable property of the town. Only by en-

joining the payment of an illegal order can complete immunity be had against the illegality. The fact that such a deficit was created by a misappropriation of funds would be no defense against a tax to repair such waste. *Willard v. Comstock,* 58 Wis. 565, 571, 17 N. W. 401. As was stated in the latter case, "The misappropriation of the public moneys forms a good ground for such an injunction by the citizen and taxpayer, because the corporation holds its moneys for the corporators, to be expended for legitimate purposes, and a misappropriation of the funds is an injury to the taxpayer for which no other remedy is so effectual or appropriate." Pages 571, 572. That the equitable remedy has frequently been recognized as the only adequate one will be seen by an examination of the following cases, all decided within the last twenty years: *Frederick v. Douglas Co.* 96 Wis. 411, 71 N. W. 798; *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245, 75 N. W. 964; *Webster v. Douglas Co.* 102 Wis. 181, 77 N. W. 885, 78 N. W. 451; *Mueller v. Eau Claire Co.* 108 Wis. 304, 84 N. W. 430; *Chippewa B. Co. v. Durand,* 122 Wis. 85, 99 N. W. 603; *Cawker v. Milwaukee,* 133 Wis. 35, 113 N. W. 417; *McGowan v. Paul,* 141 Wis. 388, 123 N. W. 253; *Schmidt v. Joint School Dist.* 146 Wis. 635, 132 N. W. 583; *McDougall v. Racine Co.* 156 Wis. 663, 146 N. W. 794.

3. The proof shows not merely a threatened injury to taxpayers, but a partially consummated one. As to many of the acts complained of, it was consummated as to everything except the payment of the outstanding orders. The alleged illegal tax was levied. Contracts were let in contemplation of the collection of the tax levy and work was done thereunder. Substantially the same state of facts appeared in *McGowan v. Paul,* 141 Wis. 388, 123 N. W. 253. Such a record presents more than a mere contemplated or threatened injury and shows an existing equitable cause of action, because nothing short of an injunction restraining the payment of the alleged illegal orders will prevent irreparable injury.

4. Sub. 13 of sec. 776, Stats. 1913, provides that "All powers relating to villages and conferred upon village boards by the provisions of chapter 40 of the statutes, excepting those, the exercise of which would conflict with the statutes relating to towns and town boards, are conferred upon towns which contain a population of not less than five hundred and having therein one or more unincorporated villages, and may be exercised by the board of such town when directed by resolution of the electors thereof at an annual town meeting." Assuming the constitutionality of the act, the question arises, How shall the population be ascertained? The statute does not provide for the taking of a special census as do some statutes of a similar nature, nor does it make the last federal or any other census conclusive upon the question of population as do other statutes. The defendants insist that under such circumstances the last federal census controls, and, since the one for 1910 showed a population of 516, plaintiffs are concluded thereby and cannot introduce evidence to contradict it. Undoubtedly the federal census is *prima facie* evidence of the population it discloses, and it, or any other census, might by statute be made conclusive upon the subject. But in the absence of any statutory declaration to that effect no existing census can be held to be conclusive when the fact is challenged. The right of towns to exercise the powers of village boards is made dependent upon their having a population of not less than 500. When that fact is put in issue, any evidence competent to establish the existence or nonexistence of the fact is admissible. The United States census was ascertained by an enumeration. Plaintiff introduced evidence of an enumeration giving the names and residences of every person enumerated. Had it not been substantially correct it would have been easy for defendants, who were officials and residents of the town, to show its incompleteness. This they failed to do. The court found that at no time since 1910 had the town of *Winter* contained a population of 500. In

April, 1913, it had only 360. If to these are added the 92 that lived in the territory set off in 1911 to the town of Draper, it would make only 452. So it is not necessary to decide whether or not the town of Draper had a legal existence prior to the town meeting of 1911. Assuming that it was then still a part of the town of *Winter,* the town would nevertheless lack the required population. The findings of the court as to the population are supported by the evidence and cannot be disturbed. Counsel for defendants cite a long list of cases to the effect that official documents cannot be impeached collaterally and argue the subject at great length in their brief. It is deemed unnecessary to review such authorities and point out their lack of application to the question here to be determined, which is, How shall the fact that a town had a population of 500 or more at a given time be ascertained in the absence of any statutory declaration that it should be by the last census, either state or federal, or by special enumeration, or otherwise? Obviously by any evidence competent to establish the existence or nonexistence of the disputed fact. The federal census was competent but not conclusive evidence of the fact. Nor are cases like *State ex rel. Terry v. Keaough,* 68 Wis. 135, 31 N. W. 723, helpful or in point. There the statute provided the population should be determined "by the last preceding enumeration by the state or general government." That fixed the method of determining the fact. In the present case the statute does not prescribe how it shall be determined. The general rules of evidence therefore apply.

The state census has been abolished. The federal census is taken once every ten years. Hence a very good reason existed why the legislature did not make the federal census the test of population. If it had, many rapidly growing towns in the northern part of the state might have to wait nearly ten years after they actually had a population of 500 or more before they could exercise the rights granted by the statute.

It was no doubt deemed quite safe to depend upon the actual fact as to what the population was, since it is not very difficult to determine with accuracy a population up to 500, even though scattered as it is in frontier towns. By. making it depend upon the actual number of inhabitants, towns can exercise the right whenever they have the required number. There would be no long period of waiting for official enumeration. A special enumeration could of course have been provided for, but it was not, and it is idle to speculate why. As already stated, the court upon sufficient competent evidence found the town of *Winter* has since 1910 never had a population of 500 or more. It was therefore not lawfully authorized to exercise the rights which sub. 13, sec. 776, Stats. 1913, confers upon towns having a population of 500 or more, and its attempt to construct and operate a system of waterworks in the village of Winter was in excess of its corporate powers and void. The same result follows as to its attempt in 1913 to levy more than $2,000 for highway purposes.

5. The present case presents perhaps as strong grounds for holding plaintiffs estopped from questioning the validity of the acts of the town relative to the construction of the waterworks system as can well be imagined. The United States census showed the town to have a population of 516 in 1910. The next year the electors voted to avail themselves of the power granted to towns having a population of 500 or more. It also voted to levy $6,000 for a waterworks system. Plaintiffs paid their share of such tax, or three fourths thereof, without question or protest. The next year a further levy of $5,000 was made and such tax was likewise paid by plaintiffs without demur. Not until after the final levy of $3,000 for waterworks was made at the annual town meeting in April, 1913, did the plaintiffs raise any objection to the power of the town to make the levy. Certainly if estoppel can apply to *ultra vires* acts of a town it ought to apply here. The equity of the application of the doctrine of estoppel is

keenly sensed by the court.    But to apply it would not only
be to overrule the recent well considered case of *McGowan v.
Paul,* 141 Wis. 388, 123 N. W. 253, but it would be the es-
tablishment of a rule whereby a town by common consent
could assume any powers it saw fit to exercise.    If the doc-
trine of estoppel could be successfully invoked in support of
the exercise of clearly *ultra vires* powers, legislative limita-
tions upon the exercise of corporate powers, whether private
or public, would depend for their effectiveness not upon the
will of the grantor of the power but upon that of the grantee.
It is one thing to apply the doctrine to the irregular use of a
power that exists, and quite another thing to create a forbid-
den power by a forbidden act.    The former is nothing more
than a waiver of the regularity of the exercise of a power
which the municipality may exercise—a valid ratification of
an irregular act because there was the power to exercise it
regularly.    The latter would be the creation by an unlawful
act of a power expressly withheld.    Neither public nor pri-
vate corporations can successfully assert the validity of *ultra
vires* acts on the ground that the members thereof have con-
sented to their commission.    It is better that occasional hard-
ships should occur under a rule which confines corporate acts
within lawful channels than that the line of demarcation be-
tween what is lawful and what is unlawful should be swept
away or be made to depend upon the choice of the creature
and not upon that of the creator.    The ground is quite fully
gone over in the case of *McGowan v. Paul,* 141 Wis. 388, 123
N. W. 253, where some of the previous cases are reviewed,
and the result there reached upon the subject is adhered to.

6. The court declared void a number of orders not issued
to or held by any of the defendants in the case.    In this it
committed error.    The payees or holders thereof are entitled
to their day in court upon the question of their validity.    The
case of *Giblin v. North Wis. L. Co.* 131 Wis. 261, 270, 111
N. W. 499, is relied upon to sustain this part of the judg-

ment. In that case, however, the persons who were held bound by the judgment in a taxpayers' action were parties thereto and the validity of the orders declared void was in issue in such taxpayers' action. They had therefore had their day in court upon that question and the judgment entered therein was for that reason held binding upon them. Here neither the holders nor the payees of the orders have had any opportunity to defend. Rights of property or of persons cannot be thus conclusively adjudicated without an opportunity on the part of the persons affected thereby to be heard. *Siegel v. Outagamie Co.* 26 Wis. 70; *Crites v. Fond du Lac Co.* 67 Wis. 236, 30 N. W. 214. No attempt was made to serve either the payees or holders of the orders. The fact that they were numerous or scattered cannot affect their rights. In so far as the judgment declares void, or enjoins the payment of, orders in the hands of persons not parties to the action it is reversed.

7. Such reversal in no wise affects the validity of the judgment declaring void the orders held by the defendants in the action. They have had as full and adequate an opportunity to show the validity of their orders as they would have had if the holders of all the orders had been in court. They have in no wise been prejudiced by a failure to bring them all in nor is the judgment against them different than it would have been upon the same evidence with all the holders of orders made parties to the action. As to each holder the controversy was a separable one and the action might proceed to judgment against them all or against a part only.

8. Two orders of $200 each were issued to one Crawford and an order for $138.85 and one for $330 were issued to one Hollen, drawn on the road fund for services performed by them in building roads in the town of *Winter*. The trial court found:

"That all of said work was performed on premises where no legal highway was laid out and where the town board of

said town had taken some proceedings to lay out a highway but had failed to make, sign, or record any order laying out the same, and that said premises were never used for highway purposes, except that order number 1043 for $138.85 was for labor performed and expenses incurred at a place where no highway was attempted to be laid out, but said Hollen performed some services upon private property by mistake as to the true location of the line; that none of said orders represent any valid indebtedness of said town or any services or expenses for which the town received any benefit, and that said orders are all void."

The correctness of this finding is challenged by the defendants, as well as the conclusion that the orders are void because work was performed upon roads not legally laid out. It is also urged that plaintiffs have been guilty of such laches in bringing the suit as to prevent them from questioning the validity of the expenditure. We have examined the evidence relating to the attempted laying out of the highway and are satisfied that it sustains the finding made. A portion of the finding is based upon somewhat conflicting evidence, but the material parts thereof are sustained by the town records themselves and by uncontradicted evidence. It was held in *Beyer v. Crandon,* 98 Wis. 306, 73 N. W. 771, that a contract with a town for work upon a highway having no legal existence is illegal. This holding was based upon the ground that a contract by town officers in excess of their power is void, and cannot be validated even by performance on the part of the contractor. It was there said:

"If it be true that town officers can contract with a person for work for their town without any authority so to do, under such circumstances that such person is chargeable with knowledge of such want of authority, and he can yet perform the contract and then recover of the corporation on the ground that it has received the benefit of his labor, a very easy road to the creation of indebtedness against towns exists, whereby taxpayers can be burdened with ruinous taxation without any adequate means of redress; but such is not the law." Pages 310, 311.

In that case equitable estoppel was held not to apply, though the town had had the benefit of the road. Here the trial court finds that the premises upon which the work was done were never used for highway purposes and that the town never received any benefit by reason of the services or expenses for which the compensation was claimed. The case is therefore barren of any valid claim of an equitable estoppel even if it were one where the doctrine would apply. But, as has already been pointed out, it cannot be invoked to vitalize an act illegal because of an absolute want of power to act at all.

Neither can the defense of laches prevail. The Hollen contract was let June 16th and the Crawford contract June 23d and the work presumably done later. This action was begun the following September. Under the circumstances plaintiffs must be deemed to have acted with reasonable promptness.

9. An order for $200 was issued to *Mont Wiley,* one of the supervisors of the town, for the loss of a horse which fell into a trench dug for the waterworks system in or near an alley in the village of Winter. *Wiley* had made a claim for $175 for the loss of the horse. The records of the town clerk show that at the noon hour of the annual town meeting of April 1, 1913, the electors voted to allow the claim in the sum of $200. The trial court found that the claim did not represent any valid indebtedness of the town; that there existed no such claim or indebtedness or disputed controversy upon any material question which would empower the electors of the town to authorize the payment of the claim. The finding is sustained by the evidence. Conceding that the resolution was regularly passed and actually voted upon during a time when the electors were lawfully transacting business, still the record shows upon its face that the order was void because based upon an allowance of $200 for a claim of only $175. Electors cannot give away the money of the taxpayers. The court correctly held the order void.

10. An order for $17.25, another for $71.43, and another for $44.67 were issued to the defendant *Nutting,* who was

town treasurer, for plank sold by him to the town. These orders are now held by the defendant *Bank of Rice Lake*. Another order for $36.23, but not held by the bank, was also issued to *Nutting* for plank sold the town. These orders were held void because the sale was in violation of the provisions of sec. 4549, Stats. 1913, which reads:

"Any officer, agent or clerk of . . . any . . . town, . . . or in the employment thereof, . . . who shall have, reserve or acquire any pecuniary interest, directly or indirectly, present or prospective, absolute or conditional, in any way or manner, in any purchase or sale of any personal or real property or thing in action, or in any contract, proposal or bid in relation to the same, . . . shall be punished by imprisonment in the county jail not more than five years or by fine not exceeding five hundred dollars."

The sale of plank to the town by *Nutting*, who was the treasurer thereof, came directly within the statutory condemnation. The argument that the statute was intended to apply only to sales made by persons other than officers or agents is not well founded. The language applies equally well to a sale made directly by an officer to the town, and the mischief sought to be prevented is as great in such a case as it would be where the sale was made by some third party in which the officer had an interest. In the latter case it would usually be a partial interest. In the former the whole interest of the vendor is in the officer selling. The statute was undoubtedly framed for the purpose of putting beyond the reach of officers any temptation to sell supplies to towns or municipalities of which they are officers or agents. It cut off all sales between them and the municipality they represented, so that they should not act both as seller and buyer. It also prohibited their acquiring an interest in the sales of others to the municipality. That contracts made in contravention of the statute quoted or similar statutes are absolutely void was settled in *Land, L. & L. Co. v. McIntyre*, 100 Wis. 245, 75 N. W. 964, and in *Quayle v. Bayfield Co.* 114 Wis. 108, 89 N. W. 892.

11. Two orders, one for $15.25 and one for $37.75, were issued to one Ordway for blacksmith work done for the town. He was also employed by the town as night watchman. The court disallowed so much of the above orders as represented work done while he was acting as night watchman because contrary to the provisions of sec. 4549, Stats. 1913. The section is a highly penal one and must be strictly construed. While the reasons against an agent or officer of the town selling his labor or time to it may be as persuasive as those against his selling personal or real property to it, still the fact remains that there is no statutory inhibition against it. The court can make none. · The language of the section is plain and unambiguous. It relates to the "purchase or sale of any personal or real property or thing in action, or in any contract, proposal or bid in relation to the same." Performing services for the town cannot be construed to be a purchase or sale of any personal or real property or thing in action within the meaning of the section. There is nothing to show that Ordway's duties as night watchman were in any way interfered with or made less effective by the blacksmith work which he performed for the town. That part of the judgment declaring a portion of these orders void is reversed.

12. A number of poor persons were either wholly or in part supported by the town. There is evidence to the effect that the proprietor of a store called the Winter Emporium was informed by the supervisors of the town that certain persons would be aided by the town to the extent of $15 per month. More than this was furnished them and the bills were afterwards audited and allowed. The evidence is not very clear that the town board fixed any definite sum beyond which aid would not be furnished. But assuming it did, the matter of the amount to be furnished was discretionary with them. They could have allowed a larger amount in the first instance. A larger amount was furnished. They could ratify what they might have done originally. There is no showing that more than what was reasonably necessary was

furnished.    The goods were sold with the understanding that the town would pay for them, and credit was given the town. In the absence of fraud or collusion the town board may, if reasonably necessary, increase the amount already fixed upon in aid of a poor person, and such increase in amount may take the form of ratification where credit was in good faith given the town.    That part of the judgment declaring void a portion of orders Nos. 964, 1040, 1127, and 1128 is reversed.

13. A number of claims passed upon by the town board were inadequately itemized or verified.    The court permitted these claims to be refiled properly itemized and verified. Plaintiffs objected and took exceptions to the court's ruling. Such exceptions are urged in favor of the judgment, but they cannot avail plaintiffs anything.    The court properly allowed the claims to be corrected in the respects mentioned, or perfect claims to be substituted for imperfect ones.

14. An order for $15 for the rent of a house for the months of March, April, and May occupied by a Mrs. Buckner, who received aid from the town, was issued to the owner of the house.    It appears that most of the rent accrued before Mrs. Buckner became a town charge and no understanding or agreement was shown to the effect that the town should in any way become liable for the rent.    The order was properly declared void.    A town has no authority to pay the debts of poor persons.    It is chargeable with the duty of presently caring for and aiding them when in need, but it has no power to pay their past debts or debts not lawfully incurred on the credit of the town.

15. Claim is made that the court improperly cut down the bills of the supervisors for per diem services and livery hire. We have examined the evidence relative thereto and from such examination have reached the conclusion that the court's findings as to those matters must stand.    The same result is reached as to the claim of Van Alstine for damages to a

ladder.   The electors had not passed upon the claim and the town board was without authority to allow it, though small in amount.

16. The order to the Winter Emporium for furnishing oil for lighting the streets of the village of Winter was properly declared void.   The town had no authority to expend money for lighting streets and the purchase was wholly *ultra vires.*

17. The court awarded costs against all the defendants except the town of *Winter.*   The awarding of costs is a matter resting in the sound discretion of the trial court.   We cannot say there was any abuse of discretion in the instant case.   A reading of the evidence discloses a lamentable looseness in the administration of the affairs of the town of *Winter,* and in many cases an apparent disregard of the rights of the taxpayers and the obligations placed upon the supervisors by law.   Many irregularities were corrected by the trial court in this case, not involved in the appeal.   These were correctly taken into account in determining the question of costs.

*By the Court.*—The judgment is affirmed except (1) that part thereof which adjudges void orders issued to payees or holders not parties to the action; (2) that part thereof adjudging void a portion of the orders issued to Ordway; and (3) that part thereof adjudging void a portion of orders Nos. 964, 1040, 1127, and 1128 issued to the Winter Emporium for supplies furnished poor persons.   As to the excepted portions the judgment is reversed, and the cause is remanded with directions to enter judgment in accordance with this opinion.   No costs are allowed upon the appeal. The appellants will pay the clerk's fees.