GERTZ and another, Respondents, vs. TOWN OF VAUGHN and
another, Appellants.

*May 24—June 13, 1916.*

*Towns: Powers: When town board may exercise powers of village
board: Conflict of statutes: Highways: Paving village street:
Special assessments: Estoppel.*

1. Within the meaning of sub. (13), sec. 776, Stats., the exercise by
   a town of the powers conferred by secs. 905 and 906 upon village
   boards in the matter of the improvement of streets "would con-
   flict with the statutes relating to towns and town boards," in
   that the town board, exercising such powers, might cause one
   half of the cost of paving a street in an unincorporated village
   to be paid out of the town treasury and thereby exhaust the
   power of the town to raise money for highway purposes, and so
   deprive the electors of the town of the power to raise money for
   the repair and building of roads and bridges. The right to ex-
   ercise such powers of village boards cannot, therefore, be con-
   ferred upon a town board by resolution of the electors of the
   town under said sub. (13), sec. 776.
2. The plan of the laws governing the construction and repair of
   highways in villages being fundamentally inconsistent with the
   laws relating to the building and repair of highways in towns,
   it is immaterial that they do not oppose each other at every
   point or that the town board might exercise a part of the pow-
   ers enumerated in secs. 905 and 906 in such a way that there
   would be no conflict in a particular instance.
3. Where a town board had no authority or jurisdiction to pave a
   street or to levy a special assessment therefor on abutting prop-
   erty, an owner of such property who acquiesced in the doing of
   the work is not estopped to question the validity of the assess-
   ment.

APPEAL from a judgment of the circuit court for Iron
county: G. N. RISJORD, Circuit Judge. *Affirmed.*

Action to enjoin the collection of a special assessment.

Plaintiffs allege that they are the owners of certain real
estate abutting on Silver street in the unincorporated village
of Hurley in the town of *Vaughn,* which town contained at
the times mentioned a population of more than 500 inhabi-

tants; that the assessed valuation of the property of said
town, real and personal, as equalized, was in 1913 $995,865;
that there was in the town treasury in the highway fund on
the 7th day of April, 1914, an unexpended balance of
$247.65; that at the annual town meeting in 1914 no money
for highway purposes was voted or raised, and that no tax
for highway purposes was levied or assessed upon the real
and personal property in said town for 1914, except a tax of
three mills on the dollar of valuation thereof for highway
purposes; that Iron county, in which the town of *Vaughn* is
situated, did not contain within its borders a city having a
population of 300,000 or more; that on the 7th day of May,
1914, the town board adopted the following resolution:

"Be it resolved by the town board of the town of *Vaughn,*
Iron county, Wisconsin, exercising the powers of village
boards under the provisions of chapter 40, Wisconsin Stat-
utes, 1913, that we cause Silver street in the unincorporated
village of Hurley in said town, to be graded and paved for a
distance approximately five city blocks, to wit, extending east
from the west side of Fifth avenue, in said village, along said
Silver street to the Montreal river, said grading and paving
to be done during the spring and summer season of 1914,
work thereon to commence as soon as practicable."

That Silver street is one of the main traveled highways in
the defendant town and that the distance stated in said reso-
lution amounts to five city blocks, or approximately 1,950
feet; that thereafter the town board caused plans and speci-
fications to be made, let a contract for the doing of the work,
the contract price being in excess of $32,000, the work being
completed about the 1st day of November, 1914; that after
the letting of the contract and on the 19th day of August,
1914, the board of supervisors made and levied a so-called as-
sessment for street improvement of said Silver street in said
unincorporated village, assessing one half of the cost thereof
to the abutting property owners and ordered the other half
of the cost of the improvements to be paid out of the town

treasury; that the amount assessed was $131.75 for each twenty-five feet of frontage and the amount assessed against the plaintiffs was $263.50; that upon completion of the work settlement was had with the contractor and there was found to be due $33,540.35; that plaintiffs refused to pay the tax levied against their property; that the amount was included in the tax roll and that a warrant therefor was in the hands of the defendant *Edward M. Reible* as treasurer of the town of *Vaughn,* who was threatening to levy upon the property of the plaintiffs to satisfy the same. Plaintiffs further alleged that the tax was void and assigned six reasons therefor, which may be summed up as follows: That the town board had no authority in law to pave the highway or street and levy a special assessment therefor and that the plaintiffs had no notice of the alleged assessment. Plaintiffs asked that the town of *Vaughn* be perpetually restrained and enjoined from enforcing the collection of the special tax and that the defendant *Reible* and his successors in office be perpetually enjoined from attempting to collect said tax or from returning the same delinquent to the county treasurer of Iron county.

The defendants answered, admitting in the main the allegations of fact in plaintiffs' complaint as hereinbefore stated, alleged that the town of *Vaughn* contained a population of more than 1,500 and had within its limits the unincorporated village of Hurley, containing more than 1,500 inhabitants; that at the town meeting held in April, 1914, a resolution was adopted conferring upon said town all the powers relating to villages and conferred upon village boards by the provisions of ch. 40 of the Statutes, excepting those the exercise of which would conflict with the statutes relating to towns and town boards, which resolution, it appears from a stipulation, is as follows:

"Resolved, by the electors of said town of *Vaughn,* duly assembled at the annual town meeting held in said town this 7th day of April, 1914, that all powers relating to villages

and village boards conferred by the provisions of chapter 40 of the Statutes and the acts amendatory thereof, except those the exercise of which would conflict with the statutes relating to towns and town boards, be, and all such powers are hereby conferred upon said town of *Vaughn,* and the town board thereof."

The answer further alleged that a like resolution had been adopted at every annual town meeting held in said town for more than fifteen years immediately preceding; that the powers exercised by the town board of said town in regard to the paving of Silver street were conferred upon said town and exercised by said board pursuant to and by virtue of the aforesaid resolution, and that the board was authorized to exercise the same. The answer further alleged that the paving of Silver street had long been considered and discussed by the taxpayers of the town; that the plans therefor were on file and were a matter of public record; that bids for the doing of the work were advertised for and submitted to the board; that the making of the contract was a matter of editorial comment in the newspapers published in the village of Hurley; that the town clerk's minutes covering the entire matter were published in the official paper of the village and also in the Iron County News; that the names of the contractor and other bidders were given, and that the plaintiffs had full knowledge of all of the facts connected with the paving of Silver street; that a notice of the special assessment was published for two weeks in the Montreal River Miner; that the contractor has been paid $19,700 and no more; that no part of the special assessment has been paid except the sum of $7,143.50; that after the making of the special assessment plaintiffs made no objection thereto, but by statements, conduct, acquiescence, and silence led the defendants to believe that they would pay the assessment, and that the plaintiffs are now estopped from questioning the validity of such special assessment.

The case was tried mainly upon affidavits and upon stipulations of the parties. The court made findings of fact,

which, in our view of the case, it is not necessary to set out in full. The findings establish the allegations of the complaint, the adoption of the resolution by the town meeting as alleged in the answer, the making of the assessment, the attempt to collect the same, and upon the question of estoppel and the contention of the parties the court found as follows:

"That before any work was done in front of plaintiffs' said premises under said contract, demand was made of them by said town that they pay the tax so levied upon their said property, namely, $263.50, to which demand the only reply made by plaintiffs was that they did not then have the money; a like demand was again made of plaintiffs by said town about the time the work was begun in front of their said lot under said contract, to which they made the same reply. Plaintiffs did not offer or raise any objection to making such payment in accordance with said demand, or in any way question the legality of said special assessment, until long after the completion of said improvement, nor did they at any time object to the making of such improvement in front of their said premises or in any part of said street. Plaintiffs knew of the progress of said work from day to day from the inception to the completion thereof.

"And the attorneys for the plaintiffs contending that said tax or assessment is void (1) because the exercise by a town of the power to grade and pave streets under secs. 905 and 906 of the Statutes conflicts with the statutes relating to towns and town boards and could not therefore have been conferred upon the defendant town by the electors thereof; (2) because said secs. 905 and 906 are unconstitutional; and (3) because the contract price of said improvement exceeded the amount which the defendant town could legally levy for the highway purposes plus the amount of the highway money on hand; and the attorneys for the defendant town contending (1) that the exercise by a town of the power to grade and pave streets under secs. 905 and 906 of the Statutes does *not* conflict with the statutes relating to towns and town boards and that such power was therefore conferred upon the defendant town by the resolution adopted by the electors; (2) that said statutes are constitutional; and (3) that the fact that the contract price of said improvement exceeded the amount which said town could legally levy for highway purposes plus the amount of highway moneys on hand, has no

'bearing on the validity of said special assessment; and said attorneys having accordingly stipulated that if the town had no power to levy said special assessment under said secs. 905 and 906 of the Statutes, or if the fact that the contract price of said improvement exceeded the amount which said town was authorized to levy for highway purposes plus the highway funds on hand deprived said town, or the board thereof, of jurisdiction to make said levy or assessment, and if plaintiffs are not estopped to raise the objection, then said special assessment or tax was and is void, and that judgment should in that event go for plaintiffs; otherwise that said special tax or assessment is valid and that judgment in that event go for the defendant."

As conclusions of law the court found that the exercise by a town of the power to grade and pave streets under secs. 905 and 906 of the Statutes conflicts with the statutes relating to towns and town boards, and that such power could not have been conferred on the defendant town; that the contract price of said improvements exceeded the amount which the defendant town could legally levy for highway purposes plus the amount of highway money on hand; that the plaintiffs are not estopped to attack said special tax or assessment; and that said special tax or assessment is void. Plaintiffs had judgment accordingly, from which defendants appeal.

*A. L. Ruggles,* attorney, and *Wm. F. Shea,* of counsel, for the appellants, contended, *inter alia,* that the voters having conferred village powers on the appellant town it had the same power as a village in respect of paving streets in the unincorporated village of Hurley and charging one half the cost thereof to the abutting property; and the exercise of such power did not conflict with any statute relating to the towns or town boards. Sub. (13), sec. 776, Stats. 1913; *Land, L. & L. Co. v. Brown,* 73 Wis. 294, 40 N. W. 482; *Hurley W. Co. v. Vaughn,* 115 Wis. 470, 91 N. W. 971; *Bennett v. Nebagamon,* 122 Wis. 295, 99 N. W. 1039.

For the respondents there was a brief signed by *Geo. C. Foster* and *Marion F. Reed,* attorneys, and *C. A. Lamoreux,*

of counsel, and oral argument by *Mr. Foster* and *Mr. Lamoreux*.

There was also a brief on the question of estoppel by *Van Dyke, Shaw, Muskat & Van Dyke,* attorneys for Marquette Cement Manufacturing Company, as *amici curiæ*.

ROSENBERRY, J.   The fundamental question in this case may be stated thus: Did the adoption of the resolution by the electors at the annual town meeting of April, 1914, confer upon the town board of the town of *Vaughn* the authority to grade and pave streets in the unincorporated village of Hurley and levy a tax therefor under secs. 905 and 906, Stats. ?

It is conceded that the resolution did confer such power if there is no "conflict" within the meaning of sub. (13), sec. 776, Stats., which is as follows:

"All powers relating to villages and conferred upon village boards by the provisions of chapter 40 of the Statutes, excepting those, the exercise of which would conflict with the statutes relating to towns and town boards, are conferred upon towns which contain a population of not less than five hundred and having therein one or more unincorporated villages, and may be exercised by the board of such town when directed by resolution of the electors thereof at an annual town meeting."

The laws relating to the repair and building of highways in towns may be briefly stated as follows: Sec. 776, Stats. 1915, authorizes the qualified electors of each town at the annual town meeting to vote to raise money for the repair and building of roads and bridges, or either, for the support of the poor and defraying of other charges and expenses of the town, provided that the total tax levied in any town for any one year for all town purposes, exclusive of school taxes and liabilities theretofore lawfully incurred, shall not exceed in the whole one per centum of the total assessed valuation of such town for the preceding year, unless a larger sum is needed for the building or repairing of highways or bridges,

in which case the electors may vote and the proper authorities may levy not to exceed one fourth of one per centum in addition to the aforesaid one per centum.

In addition to the amounts provided by the electors, the supervisors of each town (sec. 1240) may assess on the valuation of the real and personal property in each town an amount not less than one nor more than seven mills on the dollar; provided that in addition to such amount there may be assessed any additional amount which shall have been authorized by the last preceding annual town meeting, not exceeding in all ten mills on the dollar of such valuation; provided further that no town containing less than 500 inhabitants shall levy or collect in any year a highway tax of more than $2,000, including the amount voted by any town meeting and the amount levied by the supervisors; and that no town containing two Congressional townships or more and more than 500 inhabitants shall levy or collect a highway tax, exclusive of that first authorized by the section, of more than $3,000.

Under the statutes relating to villages a village board has power (sec. 893) to lay out, open, change, widen, or extend roads, streets, lanes, alleys, sewers, parks, squares, or other public grounds, and to grade, improve, repair, or discontinue the same or any part thereof, or build and repair any bridges thereon, etc., and to levy and provide for the collection of taxes and assessments; (sec. 905) when the county contains less than 150,000 inhabitants, to cause any street or any part of any street not less than sixteen rods in length to be graded, paved, macadamized, or otherwise improved, including the construction of curbs and gutters, and for the purpose of so improving any street the village board may levy and cause to be collected upon the lots, tracts, or parcels of ground fronting or abutting upon such street or part of the street improved, and upon the owners thereof, a tax sufficient to pay the expense of constructing such improvement as ordered

opposite such property to the center of the street, or such proportion thereof, not less than half, as they shall deem justly assessable to such property, if they shall think the whole ought not to be assessed, in which case the remainder shall be paid from the village treasury, and if the tax so levied shall prove insufficient to pay the cost or proportion thereof assessed against such property, the village board may levy an additional tax thereon to make good such deficiency.

The manner in which the tax shall be assessed and collected is prescribed by sec. 906.

Sec. 914 provides that the village board shall determine the amount of corporation tax to be levied and assessed on the taxable property in the village for each year, which shall not exceed in any one year two per centum of the assessed valuation of such property. Before any tax for any specified purpose exceeding one per centum of said valuation can be levied the matter must be submitted to the village electors.

Sec. 914a provides that the village board shall, at the time of determining the amount of the village taxes to be levied and raised in such village for the current year, determine the amount, if any, of highway tax to be levied and collected in such village for the current year, which shall not exceed in any one year one tenth of one per centum of the assessed valuation of such property.

Does the exercise of the powers relating to villages and conferred upon village boards in the matter of the improvement and repair of highways conflict with the powers relating to towns and town boards? We think it does, in a vital and substantial way. If a town board, exercising the powers conferred upon a village board by statute, may cause one half of the cost of paving to be paid out of the town treasury, they can, as in this case, by improving a village street, exhaust the power of the town to raise money for highway purposes, and so deprive the electors of the town of the power to raise money for the repair and building of roads and bridges.

This court, having under consideration the question of whether or not a town had power to raise money by general taxation to build sidewalks and light public streets in an unincorporated village within its boundaries, said:

"That the legislature did not purpose creating any such power as that contended for, is quite plainly indicated by the fact that it adopted a complete system in relation to the subject, by resorting solely to local taxation for the particular local purpose, in harmony with the general scheme of town government. Such system is found in secs. 1243, 1346a, 1346b, and 819, Stats. 1898. In so industriously providing for such local matters, it is the opinion of the court that it was intended to make the plan exclusive." *McGowan v. Paul,* 141 Wis. 388, 391, 123 N. W. 253.

The same may be said of the plan of the laws governing the construction and repair of highways in villages. In order that there be a conflict it is not necessary that the plans oppose each other at every point. It is sufficient if they are fundamentally inconsistent. It may be contended that there is no conflict if only that part of sec. 905 which authorizes the village board to assess the entire cost of improvements to abutting property owners be considered as adopted. The difficulty with that contention is that the statute does not provide for two things but for one thing. If the powers enumerated in secs. 905 and 906 are exercised they conflict with the powers conferred upon towns, and the powers enumerated in secs. 905 and 906 are therefore not conferred upon towns by the adoption of a resolution under sub. (13), sec. 776, Stats. It makes no difference that in a particular instance the town board might not fully exercise the powers enumerated in said sections. The question is not whether a town board can exercise a part of the powers enumerated in such a way that there would be no conflict in a particular instance. The question is, Do the powers, if exercised, conflict? If they do, then the power is not conferred either in whole or in part. If the statute conferred upon village boards the authority to cause improvements to be made of the character specified and

required the whole cost thereof to be assessed against abutting property owners, a different question would be presented. The town board could not under such a law, by improving village streets, exhaust the power of the town to raise money for highway purposes, and the exercise of one power would not then conflict with another. As the law stood in 1914 there was a clear conflict.

Therefore, upon the facts found, the town board in this case was without authority or jurisdiction in the premises, and the principle of estoppel does not apply, as has been held by successive decisions of this court. *McGowan v. Paul*, 141 Wis. 388, 123 N. W. 253; *Menasha W. W. Co. v. Winter*, 159 Wis. 437, 150 N. W. 526. The conclusion reached renders unnecessary the consideration of the remaining questions which were argued.

*By the Court.*—Judgment affirmed.