QUAYLE, Appellant, vs. BAYFIELD COUNTY and others, Respondents.

*March 13—April 1, 1902.*

*Appeal and error: Appealable orders: Demurrer coupled with answer: Practice: Waiver: Taxpayer's action: Equity: Temporary injunction: Abuse of discretion: County boards: Authority to compromise claims: Void claims: Public service: Laches.*

1. In a taxpayer's action to restrain payment by a county of a claim alleged to be void, defendants' answer contained a demurrer to the complaint for insufficiency, and also allegations justifyin the allowance of the claim. A temporary injunction having issued, on the cause being regularly called for trial, the court dissolved the injunction and dismissed the action for want of equity, the whole controversy submitted to the trial court being made to turn on the questions raised by the demurrer. *Held,* that whatever irregularities existed in interposing the demurrer or in the disposition thereof by said order were waived, and, it being in effect an order denying a temporary injunction and sustaining a demurrer, the order was appealable under subd. 3, sec. 3069, Stats. 1898.

2. The rule that a temporary injunction will be denied where all the equities of the complaint are unequivocally denied by answer under oath, does not apply to a case where, notwithstanding the denials contained in the answer, or in that and supporting affidavits, there is yet reasonable probability that the defendant may ultimately be found in the wrong, and that, without temporary restraint pending the litigation, the suit will be entirely ineffective notwithstanding the plaintiff may recover judgment.

**3.** In a taxpayer's action to restrain a county from paying a claim alleged to be void, the complaint contained allegations reasonably entitling him to the relief demanded. The answer denied all the equities of the complaint. *Held,* under the circumstances alleged, that it was an abuse of discretion for the court to refuse to preserve, during the litigation, the *status quo* upon such terms as would protect the plaintiff if he finally succeeded, or in some other appropriate way control the situation so that the judicial remedy would serve its purpose.

**4.** While county boards have power to settle doubtful claims, and a claim may be considered doubtful, although reduced to judgment, if the judgment is open to reversal in a higher court and proceedings are pending to that end, such power cannot be extended to claims which are, obviously, absolutely void.

**5.** Where a municipal judge, empowered by a resolution of the county board to rent a suitable room for holding his court, rents his own property therefor, he is one of the officers, and the transaction is a public service within the meaning of sec. 4549, Stats. 1898 (prohibiting public officers from being pecuniarily interested in any contract with public corporations in relation to any public service), and such contract is absolutely void.

**6.** An attempted settlement and payment of such claim, after an adjudication by a trial court that it was baseless, and during pendency of an appeal therefrom, is a reckless use of official position by the county board, for which even alleged advice of the district attorney is not a palliating circumstance.

**7.** A taxpayer, who commenced his action shortly after a county board had allowed an illegal claim, but before a county order for its payment was completely perfected for delivery, is not guilty of laches.

APPEAL from an order of the circuit court for Bayfield county: JAMES J. DICK, Judge. *Reversed.*

Taxpayer's action to restrain payment of an alleged void claim to defendant *Warden* by *Bayfield* county.

Ch. 38, Laws of 1895, created a municipal court for *Bayfield* county, and provided that the judge thereof should hold his office in the court room of the county court house, or other suitable room in the village of Washburn in said county, provided by its board of supervisors. The board, by resolution, delegated its power in that regard to *Warden.* He was the

judge of said court. The county limited the rent to be paid to $12 per month. *Warden* executed such power so as to enter into contract relations with the county. He became its landlord and the county his tenant. For the first six months of his term of office he rendered bills to the county for rent to the amount of $12 per month, which were paid. He did not present any bills for rent thereafter during his term of office. At the expiration thereof he presented a bill against the county for rent covering the balance of his term, amounting to $504. The county board neglected to act upon the bill, whereupon *Warden* treated their conduct as a disallowance thereof and duly appealed to the circuit court for *Bayfield* county, where, upon trial, the claim was held to be wholly void, and a judgment for costs was accordingly rendered against the claimant. He thereupon appealed to this court, and while such appeal was pending he proposed to the county board that he should take, in full settlement of his claim, the face thereof less taxable costs against him in the circuit court, and pay the costs incurred in the supreme court. The board accepted such proposition, the district attorney of the county advising that they had a legal right to do so. They authorized the execution of a county order and a delivery thereof to *Warden* consummating the settlement. Thereupon an order for $483.08 was partially prepared for delivery, but before such delivery could occur this action was commenced and a temporary injunction was issued restraining the consummation of the settlement till a hearing could be had on an order to show cause why defendants should not be so restrained till the termination of the litigation.

All the facts detailed appeared by the complaint and answer. The complaint contains a statement of all the facts, other than those particularly detailed, necessary to the right of a taxpayer to intervene and prevent the county funds from being used as contemplated. It further states that at the time of the proposed settlement there was no valid claim against

*Bayfield* county in favor of *Warden;* that the alleged claim was wholly void and had been judicially decided to be so, and that it was not a proper subject for the county board to act upon and settle. Defendants' answer contained a demurrer to the complaint for insufficiency, and, in addition, a statement of the facts as regards *Warden* being authorized to procure a place to hold his court, and an allegation that he acted in good faith in the matter. The answer further set forth all the facts that have been detailed in respect to the attempted settlement, and that the members of the board, in what they did, supposed the claim to be a proper subject for adjustment with *Warden;* and that the district attorney so advised.

The cause was placed on the calendar of the court for trial, and upon its being called for trial a motion was made to discharge the order to show cause and to dismiss the action for want of equity. Thereupon the right of the plaintiff to a temporary injunction, and the demurrer, were submitted to the court for decision. The motion was granted, and an order was entered accordingly, from which this appeal was taken.

For the appellant there was a brief by *Sanborn & Sanborn,* and oral argument by *A. W. Sanborn.*

For the respondents there was a brief by *Reed & Reed,* and oral argument by *Myron Reed.*

MARSHALL, J. Respondents suggest at the outset that the order is not appealable because it does not, in effect, terminate the action and prevent a judgment from which an appeal could be taken, citing subd. 1, sec. 3069, Stats. 1898. If this were a mere order dismissing the action, as counsel seem to assume, we would be compelled to dismiss the appeal for want of jurisdiction. But it is not such an order. There was a demurrer to the complaint, as indicated in the statement of facts. Regardless of how irregularly the demurrer was interposed, no objection was taken thereto, and we will, therefore, not taken notice thereof now. By the way the cause was dis-

posed of, it is obvious that counsel on both sides, and the court, regarded the demurrer to the complaint, and the question of whether appellant should be temporarily restrained, as submitted for decision together. In denying the application for temporary restraint, no suggestion was made, as appears by the order, that it was grounded on the denials contained in the answer, or any showing made by respondents. The entire controversy submitted was made to turn on the question raised by the demurrer to the complaint for want of equity. The trial court obviously considered that objection well taken, and that all the facts appellant could present were before the court, so that it was useless to grant leave to amend. Sufficient attention, it seems, was not paid to rules of pleading in interposing the demurrer, nor to the proper disposition thereof in framing the order. Whatever irregularities there were seem to have been waived, and we will treat the order the same as the parties and the court did, that is, as an order denying a temporary injunction and sustaining the demurrer to the complaint. In that view it is appealable under subd. 3, sec. 3069, Stats. 1898, as to both phases thereof.

Counsel for respondents endeavor to sustain the order, so far as it refused a temporary injunction, by the rule often stated, and often misunderstood, that where all the equities of the complaint are unequivocally denied by answer under oath, a temporary injunction will be denied. As we have seen, the trial court did not base the decision complained of on that rule, nor did he consider it at all. However, we will briefly discuss counsel's contention. Probably no judicial rule is more liable to be misunderstood and misused than the one invoked. Courts and counsel often make the mistake of supposing that it is a universal rule, while the fact is that it is subject to so many exceptions that the mere statement of it, in the language usually employed for that purpose, is very misleading. The rule does not apply to a case where, notwithstanding the denials contained in the answer, or in that

and supporting affidavits, there is yet a reasonable probability that the defendant may ultimately be found to be in the wrong, and that, without temporary restraint upon him pending the litigation, the suit will be entirely ineffective notwithstanding plaintiff may recover judgment. In that situation the court is not bound, absolutely, to refuse temporary restraint upon the defendant pending the litigation. In some circumstances it is abuse of discretion not to, in some way, upon just terms—either by enjoining the defendant from doing those things during the litigation which, if done, will render the remedy invoked valueless if plaintiff establishes his cause of action, or by temporarily preserving the *status quo* upon such terms as will protect the plaintiff if he finally succeeds, or in some other appropriate way,—control the situation so that the judicial remedy will serve its purpose. *Valley I. W. Mfg. Co. v. Goodrick,* 103 Wis. 436, 78 N. W. 1096. So much has been said upon this subject in recent years that it is difficult to add anything that will be helpful to the bench and bar to prevent erroneously applying the rule for which counsel contend. We repeat and affirm what was said in *Milwaukee E. R. & L. Co. v. Bradley,* 108 Wis. 467, 486, 84 N. W. 870, 877:

"Notwithstanding the conflict between complaint and answer as to the facts or the law, it is still within the discretionary power of the court, by a temporary injunction, to preserve the *status quo* between the parties pending the final decree and to prevent the doing of the acts complained of during such pendency if that be necessary to save the plaintiff or the defendant from irreparable injury by the conduct of his adversary in the meantime. Not only does the discretionary power exist to protect a party against such danger, but the duty exists to exercise it by making some reasonable provision to prevent such injury. In such cases, necessarily, the court should proceed with care, neither arbitrarily refusing to grant or continue an injunction, nor the reverse. The situation of the respective parties should receive careful consideration.

If restraint upon the defendant will not subject him to danger of any serious loss and he can be amply secured against that danger by a bond, and without such restraint the plaintiff will be in danger of suffering serious loss that cannot be adequately guarded against by a bond, good judgment may require such restraint with proper conditions.    In other situations, a wise administration may demand a different course; but whatever the situation may be, it is in the power of a court of equity to so shape its administration as to reduce the danger of a miscarriage of justice as low as human foresight can do it.    A failure to exercise judicial power to protect litigants so far as practicable from probable loss, upon the theory that there is some arbitrary rule that displaces such power under certain circumstances, is error, and an unreasonable exercise of such power by refusing temporary restraint, where there is a clear necessity therefor, is an abuse of such power."

The circumstances of this case, if the complaint shows a good cause of action, required the court to preserve the *status quo* during the litigation.    That seems clear under the foregoing rule.    The only purpose of the suit was to prevent an illegal disbursement of public money.    If, pending the action, the money were paid out, obviously the end sought would be entirely defeated regardless of the merits of the suit.    Restraint upon the respondents was necessary to prevent a probable irreparable loss to the county and to appellant.    Such restraint meant no injury whatever to any of respondents, except, perhaps, interest on the claim.

In holding that the complaint was bad for want of equity, the learned court seems to have supposed that the claim for rent was not absolutely void, therefore that it constituted a legitimate subject for settlement by the county board; that since judicial remedies were dealing with the matter at the time the settlement was effected, the claim was then sufficiently a disputed matter, which the county board had a right to deal with, notwithstanding they had once rejected it and on appeal the circuit court had decided that it was invalid, to authorize them to make the settlement.    The court may

further have been of the opinion that appellant had lost his right to invoke equity, by laches.

It may be conceded that county boards, under the principles laid down in *Washburn Co. v. Thompson,* 99 Wis. 585, 75 N. W. 309, have power to settle doubtful claims, and that a claim is not so far removed from the region of doubt as to prevent their dealing with it, merely because of a judgment in respect thereto in a trial court, if the judgment is open to reversal in a higher court and proceedings are pending to that end. That rule cannot be extended, however, to include claims which are, obviously, absolutely void. It would be a very dangerous rule to adopt—one which would be without support in either reason or authority—that a claim, having no support either in law or equity, merely because put forward against a county, is a doubtful claim, which its board may rightfully settle and use the public funds therefor. In order that a claim against a county may be rightfully said to be doubtful, there must be some reasonable ground for saying that it is legitimate. We are unable to say that the one in question satisfies that test. *Warden* was a county officer. He was prohibited by a penal statute from being pecuniarily interested in any contract with the county in relation to any public service. Sec. 4549, Stats. 1898. The furnishing of a court room to the county was public service within the meaning of that statute. A contract made in violation thereof is not merely voidable. It is absolutely void. *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245, 75 N. W. 964. For the county board to have audited *Warden's* claim when they had jurisdiction to pass upon it would have been a clear ursurpation of power, a misuse of public funds without any mitigating circumstance except ignorance of the law. The attempted payment of the claim, after an adjudication by the court that it was baseless, was a reckless use of official position. Even the alleged advice of the district attorney does not constitute a palliating circumstance. For a county board to point to the district attorney for justification

in respect to conduct so clearly wrong as not to admit of justi-
fication does not palliate their act in law or in equity. It only
makes him an accessory to their misconduct.

There is no ground, that we can perceive, for holding that
plaintiff lost his right to prosecute this suit by laches. His
right in the matter was of a primary character. It was com-
plete without any demand upon the county officers to resort
to judicial remedies to prevent the threatened wrong. *North-
ern T. Co. v. Snyder,* 113 Wis. 516, 89 N. W. 460. There is
nothing to show that he had any reason to suspect danger of
the claim being settled at the expense of the county funds till
shortly before the suit was commenced. It was commenced
substantially as soon as the necessity therefor developed. No
act on the part of respondents or either of them can be attrib-
uted to acquiescence of appellant or the class for whom he
stands. If he did not act at the very first indication of the
danger of misuse of public funds, the delay was neither such
as to indicate acquiescence, nor such as to in any way operate
to the prejudice of the claimant.

Our conclusion is that the decision of the trial court that
appellant's complaint is bad for want of equity cannot be
sustained, and that it was an abuse of judicial discretion,
under the circumstances, to refuse to restrain the county offi-
cers from carrying out the arrangement with *Warden* till the
final termination of the litigation upon the merits. The facts
set forth in the complaint are sufficient, when established, to
entitle plaintiff to the relief prayed for. The answer ex-
pressly, or by implication, admits that the complaint states
the truth. Temporary restraint was necessary to render the
final result of the litigation effective.

*By the Court.*—The order appealed from is reversed, and
the cause remanded for further proceedings according to this
opinion.