STATE, Plaintiff, vs. BENNETT, Defendant.

*October 13, 1933—January 9, 1934.*

For the plaintiff there were briefs by the *Attorney General, William A. Zabel,* district attorney of Milwaukee county, *Fred M. Wylie,* deputy district attorney, and *Edward J. Yockey,* special assistant district attorney, and oral argument by *Mr. Wylie.*

For the defendant there was a brief by *Dennis Sullivan, Jr.,* attorney, and *Walter H. Bender* of counsel, both of Milwaukee, and oral argument by *Mr. Bender.*

A brief was also filed by *Brooke Tibbs* of Milwaukee, as *amicus curiæ.*

FRITZ, J. The prosecution in this case is upon an indictment by a grand jury for malfeasance in office under sec. 348.28, Stats. The trial was to the court, without a jury, and the defendant was found guilty as charged. However, certain questions are certified by the trial court to ascertain whether under the facts of the case the finding is warranted. Those questions and our answers thereto are stated in the concluding paragraph of this opinion.

During the time of the transactions involved herein the defendant was the city planning engineer of Milwaukee, and as such was an assistant of the board of public land commissioners of the city. The position was under the civil service, and no official oath or bond was required. The defendant was also a member of an unofficial committee, appointed without statutory provision therefor by the superintendent of schools of the city, to make surveys of future school areas, and recommend plans for school development and the location and procurement of school sites, before the actual city development in such areas had resulted in greatly advanced land prices. That committee was composed largely of private citizens who acted as a matter of civic duty and without compensation. The defendant was considered desirable as a member thereof because of his position as city planning engineer and as assistant of the board of land commissioners, and his knowledge of the plans of that board and the direction and the growth and development of the city.

The functions of the city planning engineer and of the board of public land commissioners do not very clearly appear, but the very names imply that their duties pertained to the planning of future city development. In November, 1926, the defendant prepared a map or plan of "suggested development." Included in the map was a tract which was later platted as "Parkway Manor," a small part of which was then within the city limits. In 1928 those limits were extended and all of that tract was included. In 1926 the defendant and six others, including some members of the city engineer's staff, organized the Triangle Company, a corporation which purchased that Parkway Manor tract in January, 1927. In April, 1927, the school survey committee, of which Bennett was a member, reported and recommended a five-year plan of procuring sites for city schools and recommended a change as to a suggestion in a previous

report in relation to the location of a school site in the vicinity which included the Parkway Manor tract. In its survey preliminary to the submission of their recommendation the committee had viewed block No. 3 of Parkway Manor as a prospective school site. The defendant, who was a member of the sales committee of the Triangle Company, at this time engaged Geo. W. Mackinson, a real-estate agent associated in business with A. W. Birnschein, on the basis of a $1,000 commission, of which the defendant was to receive one-third, to offer that block No. 3 to the city for a school site for $20,000, and told Mackinson that the school survey committee had viewed that block. Mackinson thereupon interviewed the secretary of the school board and sent a letter to him offering to sell that block No. 3 for $20,000. The building committee of the school board, of which the defendant was not a member, recommended the acceptance of that offer, and thereupon it was accepted by the school board and its order on the city treasurer, dated June 6, 1927, payable to the "owner of block 3, Parkway Manor Subdivision," was drawn and sent with an abstract of title to the city attorney for delivery to such owner on approval of the title and the execution of a deed. That order was cashed by Birnschein and Mackinson on August 19, 1927, upon their indorsement, and a notation by the city attorney that the title of the property was in Birnschein. It appears that the title was placed in Birnschein's name to conceal from the public the fact that members of the city engineer's staff had an interest in the land purchased by the city. A deed had been prepared by Mackinson to convey the land directly from the Triangle Company to the city, but the president and secretary of that company, who were on the city engineer's staff, objected to signing a deed in that form. Instead, an option to sell to Birnschein, predated as in May previous, was then signed by the officers of that company. A consideration of $100 for the option

was recited therein, and Birnschein's check for the amount and likewise predated was drawn up to indicate that it was given on the same date as payment for that option. A deed from Birnschein to the city was then executed and delivered, and the order on the city treasurer was delivered to Mackinson. On depositing the city order, Mackinson gave the Triangle Company his check for $18,898, which was the purchase price, less $1,000 commission, $2 recording fee and $100 predated check. The Triangle Company used that money to pay off some of its debts and $500 dividends, which were immediately declared to Bennett and each of the other stockholders of the corporation. The profit of the corporation on block No. 3 was over $9,600, one-seventh of which inured to the benefit of Bennett, who also received $333.33 of the broker's commission.

Sec. 348.28, Stats. (so far as here material), provides:

"Any officer, agent or clerk of the state or of any county, town, school district, school board or city therein, or in the employment thereof, or any member of any town board or village board, or any officer, regent, treasurer, secretary, superintendent, clerk or agent of any penal, correctional, educational or charitable institution instituted by or in pursuance of law within this state, or any member of any body or board having charge or supervision of such institution who shall have, reserve or acquire any pecuniary interest, directly or indirectly, present or prospective, absolute or conditional, in any way or manner, in any purchase or sale of any personal or real property or thing in action, or in any contract, proposal or bid in relation to the same, or in relation to any public service, or in any tax sale, tax title, bill of sale, deed, mortgage, certificate, account, order, warrant or receipt made by, to or with him in his official capacity or employment, or in any public or official service, or who shall make any contract or pledge, or contract any indebtedness or liability, or do any other act in his official capacity, or in any public or official service not authorized or required by law, or who shall make any false statement, certificate, report, return or entry in any book of accounts

or of records in respect to anything done or required to be done by him officially, or in any public or official service, or who shall ask, demand, or exact for the performance of any service or duty imposed upon him by law any greater fee than is allowed by law for the performance of such service or duty, shall be punished," etc.

It is conceded by defendant's counsel that a stockholder of a corporation has such an interest in corporate property sold to a municipality as to bring him within sec. 348.28, Stats., if the other facts exist which are essential to bring him within it. *Bissell Lumber Co. v. Northwestern C. & S. Co.* 189 Wis. 343, 207 N. W. 697; *Swiss v. United States Nat. Bank,* 196 Wis. 171, 218 N. W. 842; *Washington County v. Groth,* 198 Wis. 56, 223 N. W. 575. Thus, by reason of his ownership of stock in the Triangle Company, as well as by reason of his one-third interest in the commission paid to the real-estate broker, Bennett had a pecuniary interest at least indirectly in that sale of property to the city, within the meaning and contemplation of the words "any pecuniary interest, directly or indirectly, in any purchase or sale," which are in that statute.

Defendant's counsel contends that the statute by mentioning "officers, agents or clerks" indicates an intention to make three distinct classes of persons; that these terms should be strictly construed or given a narrow rather than broad interpretation; and that the accused should not be held within them unless he clearly falls within the narrowest meaning that can be given to one of the terms. Those contentions cannot be sustained. The use of those three terms indicates a comprehensive rather than a narrow inclusion, and the legislative intention is to include within those terms as used in that statute every person who is either an officer, agent or clerk of the state or one of its subordinate governmental units, and who in one of those capacities has any duty to perform for the state or the particular governmental

unit which he is in his particular capacity in duty bound to serve. The word "officer" is used first. But as this word, if alone, might be construed as meaning one who is elected by the people for a fixed term and required to take an official oath, as the term has been construed in some cases, particularly *quo warranto* cases, as *In re Nagler,* 194 Wis. 437, 216 N. W. 493, the word "agent" was added. And as the word "agent" might be construed to mean one who acted as agent for the state or the municipality in only the particular transaction involved, the word "clerk" was added as an all-inclusive term, or as including every one in municipal service who had duties of any kind to perform. Thus there are many persons in municipal employment who are not municipal officers in the sense first stated, although so considered in common parlance, but who have duties to perform in respect to certain contracts, but do not act for the municipality in actually negotiating or entering into the contracts. A city attorney or a city engineer not elected but appointed by the city council, might be held not to be an officer in the sense stated, but in giving advice or passing upon the legal aspects or the engineering features involved, would be acting for the city and as the agent of the city in determining in respect to those matters and would, it would seem, be covered by the statute.

It is further contended on behalf of defendant that because of the requirement clearly expressed in the words in sec. 348.28, Stats., "made by, to or with him in his official capacity or employment, or in any public or official service," it is, among other reasons, necessary for the state, in order to sustain a conviction of the defendant, to show that the purchase of this school site on behalf of the city was made by, to or with him in his official capacity or employment with the city, or in any public or official service. In support of that contention it is urged that to construe the statute otherwise would render criminally liable under the statute every

person in the service of the state or any of its governmental units, in whatever capacity and however humble his position, who has stock in a corporation that sells anything which is within the terms of the statute to either the state or any such unit. In that connection it may be noted that there is nothing in the statute which expressly limits its application to transactions of officers, agents or clerks of the state or of municipalities with the state or the particular municipality in whose service they are.

Defendant's contentions in those respects are sound. It certainly was not intended by that statute that any officer, agent or clerk of the state or a governmental unit "who shall have any interest, directly or indirectly, . . . in any way or manner in any sale of real property . . . shall be punished." That manifestly would be absurd. To avoid such an absurdity as to the meaning and scope of the state it is proper and necessary, as a matter of simple grammatical and legal construction, to recognize and give due significance to the adjective clause, "made by, to or with him in his official capacity or employment, or in any public or official service," which, in the statute as worded (as appears in the portion thereof quoted above), follows the series of nouns which commences with the words "purchase or sale" and ends with the words "warrant or receipt." That adjective clause relates back to, defines, and limits each and every one of the nouns, viz., "purchase," "sale," "contract," "proposal," "bid," "tax sale," "tax title," "bill of sale," "deed," "mortgage," "certificate," "account," "warrant," and "receipt," which immediately precede that clause in that statute as worded. By reason of that adjective clause the effect of that statute, whether under consideration in relation to the first transaction named, i. e. a "purchase," or in relation to the last transaction or instrument, i. e. a "receipt," or in relation to any one or more of the other transactions or instruments mentioned in that list of nouns, is confined

to a transaction or instrument which is within the definition and limitations of that adjective clause. Then, and then only, is the meaning of that portion of the statute free from absurdity and the scope of its applicability within the limits of reason. Then the literal terms of the statute do not apply to every "purchase, sale, contract," etc., made by, to or with the state or any of its governmental units in which some officer, agent or clerk of either the state or a governmental unit, has any pecuniary interest directly or indirectly so as to render every such officer, agent or clerk criminally liable by reason of his capacity in that respect, regardless of whether such purchase, sale or contract, etc., was made by, to or with him in his official capacity or employment, or in any public or official service. On the contrary, then by virtue of the literal terms of the statute itself its application is, in this respect, expressly limited to such a purchase, or sale, or contract to the state or a governmental unit as was "made by, to or with him (i. e. the accused officer, agent or clerk of the state or the governmental unit, who has a pecuniary interest in the property purchased by or sold to it) in his official capacity or employment, or in any public or official service." Then it is not sufficient and the statute does not become applicable because such an officer, agent or clerk was merely a participant on behalf of himself or others pecuniarily interested with him in such a purchase or sale or contract which was in no respect made by, to or with him in his official capacity or employment or in any public or official service. The words of the statute certainly afford no basis for concluding that its applicability to such an officer, agent or clerk is dependent upon his having participated, solely in his private capacity on behalf of himself, and in furtherance of his own pecuniary interest.

On the other hand, if the purchase in question had been "made by, to or with him in his official capacity or employment, or in any public or official service," it would have

been wholly immaterial, under the statute, in so far as the establishment of the essential elements of the offense is concerned, whether Bennett did or did not also participate or act on his own behalf in relation to the transaction. It would certainly have sufficed to sustain a conviction, if the purchase of the property, in which Bennett had a pecuniary interest, had been made by him on behalf of the city in his official capacity or employment, even though he had not also acted or participated in some manner, on behalf of himself or the corporation in which he was interested.

In the respects now under consideration, sec. 348.28, Stats. (formerly numbered sec. 4549), was also considered by this court in at least three cases. In the case of *Quayle v. Bayfield County,* 114 Wis. 108, 89 N. W. 892, the county board by resolution delegated its power to provide court quarters to Warden, the judge of the municipal court of the county. Warden executed such power so as to enter into contract relation with the county, by which he became the landlord and the county his tenant. In relation to his claim for the rent the court said:

"Warden was a county officer. He was prohibited by a penal statute from being pecuniarily interested in any contract with the county in relation to any public service. Sec. 4549, Stats. 1898. The furnishing of a court room to the county was public service within the meaning of that statute. A contract made in violation thereof is not merely voidable. It is absolutely void."

That language must, of course, be read in connection with the facts in the case. The case was one where the county board had delegated to the municipal judge—an officer of the county—the duty of renting a court room for his court. As he sought to execute that official duty of renting a court room by dealing with himself as landlord of the county, he brought himself squarely within the statute, with its meaning and scope rightly construed so as to re-

quire as an essential element of guilt the making of the contract by, to or with the official in his official capacity or employment, or in any public or official service.

The next case was *Menasha Wooden Ware Co. v. Winter,* 159 Wis. 437, 150 N. W. 526, in which, among other things, the validity of certain town orders issued to the town treasurer for certain plank sold by him to the town was challenged. These orders could be paid only by this treasurer in his official capacity. As treasurer he would have to turn over the town's money to himself as the seller. This court said in relation to sec. 348.28, Stats.:

"The statute was undoubtedly framed for the purpose of putting beyond the reach of officers any temptation to sell supplies to towns or municipalities of which they are officers or agents. It cut off all sales between them and the municipality they represented, so that they should not act both as seller and buyer. It also prohibited their acquiring an interest in the sales of others to the municipality."

In that action there were also involved two orders for blacksmith work done for the town by one Ordway, who was also in the employment of the town as night watchman. On appeal sec. 4549 was held not to defeat his right to recover for such other work, although he was at the time in the town's employment for other purposes. This court then said:

"The court disallowed so much of the above orders as represented work done while he was acting as night watchman because contrary to the provisions of sec. 4549, Stats. 1913. The section is a highly penal one and must be strictly construed. While the reasons against an agent or officer of the town selling his labor or time to it may be as persuasive as those against his selling personal or real property to it, still the fact remains that there is no statutory inhibition against it. The court can make none. The language of the section is plain and unambiguous. It relates to the 'purchase or sale of any personal or real property or thing in action, or in any contract, proposal or bid

in relation to the same.' Performing services for the town cannot be construed to be a purchase or sale of any personal or real property or thing in action within the meaning of the section. There is nothing to show that Ordway's duties as night watchman were in any way interfered with or made less effective by the blacksmith work which he performed for the town. That part of the judgment declaring a portion of these orders void is reversed."

That conclusion that the town's night watchman was not barred by sec. 4549, Stats., from recovering for blacksmith services performed by him for the town otherwise than in his capacity as its night watchman was considered erroneous in *Henry v. Dolen,* 186 Wis. 622, 626, 203 N. W. 369. In the latter case this court said:

"While in the *Menasha Case* it was held, at page 453, that certain blacksmith's services rendered by the night watchman were not within the provisions of this statute, it is apparent that the court overlooked the fact that the statute indicates any pecuniary interest in a contract relating to public service as well as the 'purchase or sale of any personal or real property or thing in action, or in any contract, proposal or bid in relation to the same.'"

That criticism, because of an apparent oversight in the decision in the *Menasha Case,* seems proper. It is true that the conclusion that the services as a blacksmith were not within the statutory inhibition, because they were not within the inhibition against the selling of personal or real property to the town, and was apparently reached while the court overlooked that the inhibition of the statute also expressly related to any such contract "in relation to any public service." However, in none of those three cases above referred to does it appear that this court passed upon the proposition that the statutory inhibition is applicable only, and violations thereof on the part of such an officer, agent, clerk or employee occur only when such contracts, or purchases, etc., were "made by, to or with him in his official capacity or employment, or in any public or official service." Neither

has the apparent omission to consider that proposition and the provision last quoted from the statute, resulted in any erroneous denial of relief. In *Henry v. Dolen, supra,* the public services which were the basis of the claimed right for the extra compensation which was involved in that action, were rendered for the county by a claimant who was a member of the county board, and as such required by sec. 59.79, Stats., to act in his official capacity and in his official service upon all such claims.

As Bennett had no legal duty as such agent or clerk of the city to act, and did not act for it in any manner in making the purchase by the city, the fact that he had a pecuniary interest in the property purchased and the commission to be paid to the broker did not bring him within the condemnation of sec. 348.28, Stats., even though his activities, on the one hand, as the city planning engineer, and as a member of the unofficial school survey committee, which preceded the selection of the school site in question, and his subsequently profiting, on the other hand, by receiving dividends and commissions as a result of that purchase, may have constituted pernicious and reprehensible duplicity on his part.

*By the Court.*—In accordance with the construction of the statute above indicated the questions submitted are answered as follows:

1. Was the defendant an officer, agent or clerk within the meaning of sec. 348.28? *Yes.*

2. Does sec. 348.28 make a criminal offense of a transaction as to which the defendant has no official duty to perform? *No.*

3. Did the defendant have an official duty to perform with reference to the sale here made within the meaning of sec. 348.28? *No.*

4. Does sec. 348.28 make a criminal offense of a sale of land to the governmental unit where the contract is not made by, to or with the defendant in his official capacity? *No.*

5. Was the sale of the real estate in question made by, to or with the defendant in his official capacity within the meaning of sec. 348.28? *No.*

FOWLER, J. (*dissenting*). The opinion of the court first construes the words "officer, agent or clerk" used in the statute as including "every one in municipal service who had (has) duties of any kind to perform." With this construction I agree. And it seems to me that under this construction the defendant Bennett had "duties to perform" as city planning engineer. The above to my mind brings him within the statute and brings the transaction involved within its prohibition.

The opinion of the court cites as an example of the acts of an officer coming under the ban of the statute, the act of a city attorney selling his property to the city when he might be called upon to pass upon the validity of the title for the city, or a city engineer being called upon for an opinion as to engineering features of a city project, in a contract for the carrying out of which he had some pecuniary interest. If we assume the interest of the city attorney or city engineer to be as a stockholder of a corporation that is selling the property or that is interested in the contract, it seems to me that the situation of the defendant Bennett is precisely the same under the facts of this case as the stated situation of the city attorney and the city engineer. The school board and its site committee were certainly in a position to ask the defendant by reason of his being the city planning engineer for an opinion as to the fitness or desirability of the property purchased for a site for a school building.

The holding of the court that the only act of an "officer, agent or clerk" which is penalized by the statute is one in which he acts in a dual capacity, as both for himself in selling and for the city in buying, is to my mind clearly erroneous. The statute does not warrant such a narrow construction.

The decisions of this court, so far as they have dealt with the statute, are to the contrary. In the case of *Menasha Wooden Ware Co. v. Winter*, 159 Wis. 437, 150 N. W. 526, the act of a night watchman of a town in shoeing horses for the town was involved. It was assumed that the statute covered night watchmen. The act was held not within the statute because not done in relation to any sale or purchase by the town. Later, however, in *Henry v. Dolen*, 186 Wis. 622, 203 N. W. 369, this was held error because the act was performed in relation to a "public service" which is expressly covered by the statute as clearly as a sale or purchase.

It is intimated in the opinion of the court that in the cases above cited the point was not considered by the court that the officers of the city involved must be acting in a dual capacity to bring them within the prohibition of the statute. The point was involved, however, necessarily, and the court could not have failed to see it and to consider it. To say that it did not, is to charge the members of the then existing court with stupidity or worse.

The court's holding in *Quayle v. Bayfield County*, 114 Wis. 108, 89 N. W. 892, that the county judge in renting his own rooms to the county for use as his office as county judge, which is approved by the opinion of the court herein on the ground that the county judge was by action of the county board made the agent of the county in procuring the room, cannot be supported upon that theory. The county board has no power to delegate its duty and authority to act for the county. The county judge was not the agent of the county in the matter, because the county board had no power to appoint an agent to act for it. His act was in violation of the statute because he was a county officer, and the statute prohibits county officers from being interested in transactions with the county.

The history of the statute as indicated by the Revisors' Notes to R. S. 1878, also negatives the idea that only acts

done in a dual capacity are prohibited by the statute. The revisors codified a dozen or more malfeasance statutes standing in the session laws "with *additional classes* standing in the same relation to the public service, and more stringent provisions (were) made," as stated by the revisors, and expressed them in secs. 4549 and 4550, R. S. 1878, which still stand, with slight changes not here material, as secs. 348.28 and 348.29, Stats. 1931. Secs. 4550 and 348.29 penalize any person mentioned in the next preceding section "who shall pay, redeem, discount or purchase any debt or claim" against the governmental unit in whose service he is or "shall wilfully violate any provision" of those sections. Examination of the session laws codified, a summary of which next follows, shows a constant extension of penalizing provisions respecting both acts and persons.

Sec. 4, ch. 96,. Laws of 1859, made it a misdemeanor for a town clerk to refuse to calculate and extend upon the assessment roll the tax apportioned to the town by the county board of supervisors.

Ch. 89, Laws of 1859, provided for purchase of supplies by the state superintendent of public property, and sec. 6 of the act made it a misdemeanor for any person to make a contract or any purchase in violation of its provisions.

Ch. 328, Laws of 1860, provided that no officer or agent of any of the public institutions of the state, or any other person "except as authorized by ch. 89, Laws of 1859, should contract or in any manner create an indebtedness for building purposes, fixtures, etc., . . . except when the indebtedness has (had) been authorized by law," and made the violation of the statute by any person a misdemeanor.

Sec. 126, ch. 155, Laws of 1863, made it a misdemeanor for the clerk of a school district to sign a false report with intent to cause the town clerk to apportion to his district a larger sum than its just proportion of school moneys, and sec. 128 of the act made each member of a school board liable to a penalty who should refuse to carry out any

decision made by the state superintendent of schools made upon appeal from their action or refusal to act.

Ch. 276, Laws of 1864, made it unlawful for any county treasurer or county clerk or any of their deputies or clerks or any person for them to purchase property sold for taxes at any tax sale or to purchase any tax certificate or tax deed held by the county except on behalf of the county, and made every violation of the statute a misdemeanor.

Ch. 532, Laws of 1865, made it a misdemeanor for county treasurers and county clerks to fail to keep and report the fees received by them and pay them into the county treasury monthly.

Ch. 26, Laws of 1866, prohibited members of county boards of supervisors and any other county officer, whether elected or appointed, from being a party to or in any way interested, either directly or indirectly, in any contract or agreement whatever with the county for the purchase of any article whatever required by the county.

Ch. 117, Laws of 1868, prohibited and made it a misdemeanor for any trustee, regent, commissioner or other officer, agent or employee of any educational or benevolent institution of the state or of the state prison or reform school to be in any way interested, directly or indirectly, in any contract or agreement for furnishing supplies or materials for the institution with which he was connected.

Sec. 11, ch. 39, Laws of 1870, which provided for a state insane asylum, made it a misdemeanor for any member of the board of commissioners of the institution to be interested pecuniarily, either directly or indirectly, in any contract authorized by the act.

Ch. 79, Laws of 1871, authorized county boards of certain counties to appoint inspectors to examine designated land within the county and report as to the amount and kind of lumber thereon, and the kind of soil thereof, and made it a misdemeanor for any such inspector to make a false report.

Ch. 211, Laws of 1874, provided that the superintendent of public property should advertise for bids for stationery for the state and made it a misdemeanor for him to neglect or refuse to abide by the act or corruptly enter into any contract or understanding with any bidder by which he should be in any way benefited or the interest of the state in any way prejudiced.

Ch. 339, Laws of 1875, made it a misdemeanor for district school boards to fail to determine and vote a tax sufficient for school purposes, and for a school district clerk to fail or refuse timely to certify to the town clerk any tax so voted.

It is to be observed that these session laws relate severally to town clerks, town treasurers, clerks of school districts, school boards, county treasurers, county clerks, members of county boards of supervisors, to all county officers, and to boards managing the several state institutions. Some penalize acts independent of interest of the officer in the transaction. Some base the imposition of penalty upon persons interested directly or indirectly. Purchases of real estate by municipalities are not covered by these statutes, except perhaps in connection with a state insane asylum. The phrase "officer or agent" appears in some of the statutes, but the phrase "officer, agent or clerk" nowhere appears in them, nor do the phrases "in his official capacity" or "in his official capacity or employment." The word "clerk" only appears in ch. 276, Laws of 1864, which penalized county treasurers and county clerks or "any of their deputies or *clerks*" for purchasing property sold for taxes or tax certificates or taking tax deeds. The word "clerk" was apparently added to the words "officer or agent" by the revisors and legislature of 1878, as "an additional class" to which the provisions of sec. 4549, R. S. 1878, should apply, and the phrase "in his official capacity or employment" was apparently used to cover the prohibition of the statute of 1864 relating to purchase of property sold for taxes, etc.,

and to cover the other matters of bills of sale, deeds, etc., added by sec. 4549 to the things penalized by the 1864 statute. The clause in sec. 4549 "or do any other act in his official capacity . . . not authorized by law" was apparently inserted as a catch-all to cover all specific prohibitions upon "officers" contained in the session laws codified and any other violations of law by officers. It was apparently the purpose of the revisors of 1878 and of the legislature that enacted the revision to frame a malfeasance statute that would cover every conceivable violation of law by municipal officers and every conceivable transaction by them or any "agents or clerks" in municipal service with the municipality served in which they or any of them had any interest.

The opinion of the court argues that the phrases "in his official capacity or employment" and "in his official capacity" bear out the court's idea that only acts in a dual capacity are prohibited by the statute. To my mind the contrary very clearly appears from consideration of the language of the statute itself. These words are used in context as follows: . . . "in any purchase or sale of any personal or real property or thing in action, or in any contract, proposal or bid in relation to the same, or in relation to any public service, or in any tax sale, tax title, bill of sale, deed or mortgage, certificate, account, order, warrant or receipt made by, to or with him *in his official capacity or employment,* or in any public or official service, or who shall make any contract or pledge, or contract any indebtedness or liability, or do any other act *in his official capacity.*" The argument of the court's opinion in this respect is based upon the assumption that the phrases quoted refer back to the words "officer, agent or clerk" used in the first clause of the statute and qualify all penalized acts specifically mentioned in the statute of any "officer, agent or clerk" of the state or any municipality. But by a familiar rule of syntax qualifying phrases are to be referred to the next preceding antecedent.

This rule has been frequently applied by this court in construing statutes. *Jorgenson v. Superior,* 111 Wis. 561, 566, 87 N. W. 565; *Zwietusch v. East Milwaukee,* 161 Wis. 519, 522, 154 N. W. 981; *Dagan v. State,* 162 Wis. 353, 354, 156 N. W. 153. Under this rule the phrase "in his official capacity or employment" must be referred to "any tax sale, tax title, bill of sale, deed or mortgage, certificate, account, order, warrant or receipt made by, to or with him (any officer, agent or clerk)." By the same token the phrase "in his official capacity" must be referred to "any contract or pledge" made, or any "indebtedness or liability" contracted, or "any other act done" by any officer, agent or clerk. The construction that the phrases quoted refer back to the words "officer, agent or clerk" used in the first clause of the statute and qualify each and every of their penalized acts thereafter specifically mentioned in the statute makes these phrases apply to acts done "in relation to any public service." This would prohibit an "officer, agent or clerk" from performing "any public service" whatever and leads to the palpable absurdity of prohibiting any of them from performing the duties of his office or employment, for the performance of these duties is manifestly the performance of public services.

The construction of the statute made by the court goes more or less upon the assumption that nothing objectionable is done when a municipal or state "officer, agent or clerk" deals with the municipality or state in a matter outside the duties of his office or employment. But should the city superintendent of schools sell his own property to the city for a school site, or the chief of police sell his own property to the city for a police station, I imagine that every right-minded person in the city of Milwaukee would perceive something objectionable in the transaction. The officers of municipalities form a closely connected body. The opportunities for them each to favor another in matters con-

nected with his own but not in the other's duties is obvious. The city clerk has nothing to do with purchases of office supplies by the city treasurer, and the city treasurer nothing to do with purchasing supplies for the office of the city clerk. Therefore, under the court's construction of the statute, the city clerk may sell to the city treasurer and the city treasurer may sell to the city clerk. Under this construction the city clerk may sell school supplies to the school board, and the city superintendent of schools sell supplies to the city clerk. A clerk in one city office may sell supplies for use in another city office. The statute was manifestly intended to prevent every such sort of thing. Such was manifestly the idea of ch. 26, Laws of 1866, which prohibited members of county boards and all other county officers, whether elected or appointed, "from being a party to or in any way interested, either directly or indirectly, in any contract or agreement with the county for the purchase of any article whatever purchased for the county." That idea was carried into the revision of the statutes of 1878 and made applicable not only to counties and county officers, but to municipalities and municipal officers of all classes and to the state and state officers, and extended to agents and clerks as well as officers. Any other intendment of the revisors or the legislature of 1878 seems to me "unthinkable."

It must be granted that the construction I contend for makes the statute reach to transactions which may be entirely free from harm. But so was having in possession a beverage of alcoholic content of .0051 per cent. under the Volstead and Severson Acts free from harm. And the former may be justified upon the same legal principle as was the latter; that is, on the ground that it is necessary as was the other, to prevent things not free from harm, but evil in themselves and pregnant with great harm to the public. And this statute has been in force since 1878 and no person has ever yet been prosecuted for an innocent and harmless

transaction, if the records of this court be taken as evidence, and there is no reason to fear that the statute will be made an instrument of persecution in the future any more than it has been in the past. The penalty imposed for a violation of it might be no more than a fine of one cent, and doubtless would not be if a prosecution under the statute were for a transaction entirely free from harmful effects and without tendency to or suspicion of harm. It is proper to consider in this connection that transactions harmless in their effects or trivial in their nature are not prosecuted by public officials although clearly included within the terms of penal statutes. If perchance such a prosecution should be instituted, the jury or the court would effectively take care of it. Of this the presence of the "Blue Laws" on our statute books until recently, and the prosecutions and absence of prosecutions under them, afford ample proof. I do not recall of any newsboy being prosecuted for selling a newspaper on Sunday.

Some of the transactions set up as scarecrows to frighten the court away from the construction of the statute which to my mind it plainly requires, do not, in my opinion, fall within the intent of the statute. For instance, it is urged that the construction of the statute above indicated renders every person in the employ of the city of Milwaukee, in whatever capacity and however humble his position, who has stock in a corporation that sells supplies or property of any sort to the city, criminally liable under the statutes. This by no means follows. Statutes are to be construed according to their reasonable intendment. They need not be construed according to their literal terms, if those terms as literally applied would render them absurd or manifestly unreasonable and reasonable intendment is apparent. Thus the instant statute by its literal terms would apply to every "officer, agent or clerk" of a municipality who sold property to or entered into contracts with any private person. There

is nothing in the statute expressly limiting its application to transactions of officers, agents or clerks of municipalities with the municipality in whose service they are. But the statute relates to malfeasance in office, and perforce must be applied, in reason, to transactions between the officer and the municipality he serves. No one so far as appears, during all the years the statute has stood in practically its present form, has ever thought of claiming that it applied to any other sort of transactions or that it is void because it does so apply. Manifestly the statute was not intended to prohibit municipal officers from dealing with private persons.

There would be no more reason to apply the statute to persons in municipal service who own stock in corporations that deal with the municipality in whose service they are when the person knows nothing at all about the transaction of the corporation with the municipality than to apply it to persons in public service who sell their property to private persons. Criminal statutes are enacted to prevent acts declared criminal. "A crime is an act committed or omitted in violation of public law either forbidding or commanding it." 1 Wharton, Criminal Law (11th ed.) p. 17. One must be an actor to commit a criminal act. When one does not commit an act he is not subject to punishment for commission of that act. This rule is subject to the exception that where the statutes require a license for conducting a business and absolutely prohibit the doing of certain things in the conduct of that business, the principal is held criminally responsible for the doing of those things by his agent in charge of the conduct of the business, whether he knows of the doing of the thing or not, as in the case of the sale of intoxicating liquor to persons to whom the sale of liquor is prohibited. The purpose of such statutes is "to regulate the conduct of the liquor business and to prohibit the specified acts whether done by the licensee himself as principal or by his bartender as agent." *Olson v. State,* 143 Wis. 413, 127

N. W. 975. In these cases the person doing the prohibited act is the agent of the licensed person, made so by his own act, and the licensed person is held responsible for the conduct of his business conformable to the law, whether he conducts the business personally or by an agent of his choice. In such case the act of the agent is the act of the principal because of the existing relation created by the principal. In case of a person in municipal service who is a stockholder in a corporation that, without the stockholder's knowledge, deals with the municipality in whose service the stockholder is, the stockholder has not made the corporation his agent. The idea that there must be a conscious commission of an act by the accused to make the act criminal, except in cases like sales of liquor in licensed places by the licensee's agent, inheres throughout the criminal law. This is the basis of the rule that if one does an act while walking in his sleep or in delirium or while insane that would be criminal but for his mental condition he is not criminally responsible. One cannot be conscious of an act of which he has no knowledge.

The same may be said about participation. If a stockholder of a corporation who was also a municipal officer did not participate, directly or indirectly, by exerting influence or otherwise, in a transaction between the corporation and the municipality of which he was an officer, he could not be held criminally responsible for the transaction. If he were connected with the corporation in a managerial capacity, knowledge by him of the transaction might support an inference of participation. And he conceivably might be so situated that knowledge of the transaction would place upon him a duty to prevent consummation and thus make him in effect a participant. These questions we are not here called upon to decide. But participation in some way would be essential to criminal responsibility.

It would seem upon this general principle to go without saying that had the defendant herein had no connection what-

ever with the transfer of the Triangle Company's property to the city of Milwaukee, he would not, by reason of his stock ownership in the corporation, be subject to prosecution under the malfeasance statute. To render one subject to prosecution under the statute he must be a participant, an actor, in some manner, in or in connection with the transaction involved. The defendant herein, however, had knowledge and had guilty knowledge of the transaction involved as the endeavor to conceal the interest of the city employees in the transaction shows, and he participated in that transaction. He instigated the purchase. He was a selling agent of the corporation, and was himself the procuring cause of that purchase.

In accordance with the construction of sec. 348.28, Stats., above indicated the answer to each of the questions submitted for answer, except question (5), should be "Yes." Question (5) should be answered "No," with the explanation that by the answer is meant that the defendant is not an officer of the city whose duty it was to act for the city in negotiating the purchase of the property involved or in accepting the offer of the Triangle Company for the sale of the property.

The construction of the malfeasance statute given by the court leaves the public unprotected against many acts harmful to the public interests possible of commission by municipal and state "officers, agents or clerks" which the statute has heretofore been commonly understood to prohibit and penalize. This dissenting opinion is filed with the purpose of calling to the attention of the legislature the need of so redrafting the statute as to make it include such acts as they may deem should be included that are not within it as the court has construed it.

I am authorized to state that Mr. Justice OWEN concurs in this opinion and Mr. Justice WICKHEM concurs as to the answer to question (3).